RALPH NADER ET AL. v. PAUL B. ALTERMATT, INSURANCE COMMISSIONER, ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, JS.

44

Argued November 13, 1973—decision released February 26, 1974

*Dwight O. Schweitzer,* with whom, on the brief, was *Bruce Mayor,* for the appellants (plaintiffs).

*Joseph P. Cooney,* and *John H. Schafer* of the District of Columbia bar, for the appellees (defendants International Telephone and Telegraph Corporation and Hartford Fire Insurance Company).

*Frank Rogers,* assistant attorney general, for the appellee (named defendant).

HOUSE, C. J.   The plaintiffs have appealed from a judgment of the Superior Court dismissing their appeal from a finding and final order of the defendant insurance commissioner[1] of the state of Connecticut approving an application by the defendant International Telephone and Telegraph Corporation, hereinafter referred to as ITT, to make an exchange offer for the stock of the defendant Hartford Fire Insurance Company, hereinafter referred to as Hartford Fire, pursuant to the then recently enacted provisions of Public Act No. 444 of the 1969 session, now codified as §§ 38-39a through 38-39*l* of the General Statutes.

The court made a limited finding confined to the issue of aggrievement.   From this the following facts appear:   The plaintiff Ralph Nader is an

---

[1] At the commencement of this appeal, the then insurance commissioner, William R. Cotter, was named as a party defendant in his official capacity.   He resigned as commissioner on September 18, 1970, and his successor, Robert F. Claffey, was substituted as a party defendant.   When Paul B. Altermatt succeeded Claffey as insurance commissioner he, in turn, on April 2, 1971, was substituted as a party defendant.

author, lecturer and advocate of consumer interests, who resides in the District of Columbia, although he is a member of the bar and a domiciliary of Connecticut. The plaintiff Reuben Robertson who is an attorney and associate of the plaintiff Ralph Nader and who likewise resides in the District of Columbia, has been, since prior to December 22, 1969 (the exchange offer application date), the holder of a basic homeowner's insurance policy issued by the defendant Hartford Fire in the amount of $35,000, for which the premium is approximately $200 per three-year term. The plaintiff Peter Cooper is a resident of Connecticut and has been a shareholder of ITT since prior to December 22, 1969. The plaintiff Margaret Curtin is a resident of Connecticut who, from prior to December 22, 1969, had been a shareholder of the defendant Hartford Fire. On October 11, 1973, the defendant ITT, a Delaware corporation with its principal headquarters in New York and qualified to do business in Connecticut, and the defendant Hartford Fire, a Connecticut corporation specially chartered to engage in the business of insurance, moved to dismiss the appeal of the plaintiff Margaret Curtin, averring that her justiciable interest in the litigation terminated on April 23, 1973, when she exchanged all her shares of Hartford Fire for ITT stock, pursuant to the exchange offer which is the subject matter of this dispute. This court denied that motion without prejudice to argument at the time of the appeal of the issue raised by the motion. *Nader* v. *Altermatt,* 165 Conn. 818, 310 A.2d 74.

On July 23, 1969, the defendants ITT and Hartford Fire sought the approval of the insurance commissioner for a proposed plan and agreement of

merger. After a public hearing, however, approval of the plan was denied by the commissioner's finding and order dated December 13, 1969, wherein the commissioner expressed dissatisfaction with various aspects of the proposal and stated that the proper method for effectuating an affiliation between the companies was by exchange offer pursuant to Public Act No. 444, which had become law upon its passage on June 11, 1969.

On December 22, 1969, ITT submitted an application for a proposed tender offer whereby shares of ITT series N convertible preferred stock would be offered on a stated exchange ratio for common stock of Hartford Fire. Although the financial terms of the plan of the merger and exchange offer were substantially the same, the exchange offer proposal gave each Hartford Fire shareholder the unrestricted option to accept or reject the ITT stock, whereas, under the earlier proposed plan of merger, dissenting shareholders would have been left to their statutory rights of appraisal. Furthermore, certain executive stock options, which the commissioner had previously found objectionable, had been voluntarily relinquished by the corporate officers involved. Approximately 99 percent of the common stock of Hartford Fire was tendered to ITT under this exchange offer.

ITT's application for the acquisition of a domestic insurance company was the first to be filed under the new law,[2] which required an information state-

---

[2] "[General Statutes] Sec. 38-39b. ACQUISITION OF CONTROL OF DOMESTIC INSURANCE COMPANIES LIMITED. INFORMATION STATEMENT FURNISHED STOCKHOLDERS. BOND REQUIRED. (a) No person other than the issuer shall make a tender offer for, or a request or invitation for tenders of, enter into any agreement to exchange securities for, seek to acquire, or acquire, in the open market or

ment to be filed with the commissioner, sent to the target insurance company and disseminated by the insurance company to its stockholders within thirty days of its receipt by the target company and upon approval by the commissioner.

The commissioner authorized the dissemination of the tender offer statement, which included ten categories of information. The statement and a notice of public hearing were mailed on January 18, 1970, to each Hartford Fire shareholder of record as of December 31, 1969. Notices of the public hearing were published with the requisite frequency in the Wall Street Journal, the New York Times, the Hartford Courant and the Hartford Times.

At the public hearings held by the commissioner between March 10 and March 12, 1970, ITT pre-

---

otherwise, any voting security, or any security convertible into or evidencing a right to acquire a voting security, of a domestic insurance company if, after the consummation thereof, such person would, directly or indirectly, or by conversion or by exercise of any right to acquire, be the beneficial owner of more than ten per cent of the voting power of the securities of such domestic insurance company, unless, at the time any form of initial offer, request or invitation is made to securityholders or the agreement is entered into, or prior to the acquisition of such securities if no offer or agreement is involved, such person has filed with the commissioner and has sent to such insurance company, and such insurance company has sent to its stockholders, a statement containing the information required by subsection (b) of this section and such offer, request, invitation, agreement or acquisition has been approved by the commissioner as provided in section 38-39d. Such insurance company shall mail a copy of such statement to its stockholders within thirty days from the receipt of such statement and the expenses of such mailing shall be borne by the person sending such statement to the company. Any person filing a statement with the commissioner under the provisions of this subsection shall deposit with the commissioner a bond, executed by a surety company authorized to do business in this state, in the amount of fifty thousand dollars, conditioned to indemnify the insurance company for expenses incurred in carrying out its duties under sections 38-39a to 38-39*l*, inclusive. . . ."

sented twenty-six exhibits and the testimony of fifteen witnesses including executives of ITT and Hartford Fire, executives of ITT subsidiaries and independent financial and insurance analysts. Although interested persons and members of the public were afforded the opportunity to make statements, to present evidence including testimony, and to examine and cross-examine witnesses, none of the plaintiffs appeared or otherwise participated in the public hearings.

The plaintiffs' brief discloses that after the conclusion of the public hearings, Nader met privately with the insurance commissioner and subsequently submitted statements, information and papers in the nature of a brief in opposition to the ITT application.

The commissioner issued a finding and final order on May 23, 1970, which found that ITT's application satisfied each of the five substantive criteria required under the statute.[3] Nader and Robertson filed a petition for a rehearing which was denied by the commissioner on May 28, 1970.

---

[3] "[General Statutes] Sec. 38-39d. DISPOSITION RE ACQUISITION. HEARING. STANDARD OF REVIEW. . . . (b) The commissioner shall not approve any such offer, request, invitation, agreement or acquisition unless he finds that: (1) Upon completion of the acquisition, the domestic insurance company would be able to satisfy the requirements for the issuance of a license to write the line or lines of insurance for which it was licensed prior to such acquisition; (2) the financial condition of the acquiring person is not such as might jeopardize the financial stability of the insurance company, or prejudice the interests of its policyholders or the interests of any remaining securityholders who are unaffiliated with the acquiring person; (3) if a tender offer or exchange offer is contemplated, the terms thereof are fair and equitable to the securityholders of the insurance company; (4) the plans or proposals which the acquiring person has to liquidate the insurance company, to sell its assets or to merge or consolidate it with any person, or to make any other

The plaintiffs sought a review de novo in the Superior Court pursuant to § 38-39k of the General Statutes,[4] which permits an appeal and judicial review to "[a]ny person aggrieved by any regulation, order or other action of the commissioner" and further provides: "The court shall conduct its review without a jury and by trial de novo, except if all parties so stipulate, the review shall be confined to the record." The parties refused to stipulate and the court proceeded with a hearing at the conclusion of which it rendered judgment dismissing the appeal. On the appeal to this court from that judgment, the trial court filed a limited finding confined to the issue of aggrievement.

The decisive issue for our consideration on this appeal is whether the trial court was in error in concluding that the plaintiffs had failed to prove that they were aggrieved persons within the intendment of the provisions of § 38-39k (a) of the General Statutes and, accordingly, lacked standing to appeal from the May 23, 1970, finding and final order of the insurance commissioner. We conclude that the court was not in error.

material change in its business or corporate structure or management, are fair and reasonable to policyholders and securityholders; and (5) the competence, experience and integrity of the acquiring person are such that it would be in the interest of the policyholders and securityholders of such insurance company and in the public interest for such offer, request, invitation, agreement or acquisition to be made."

[4] "[General Statutes] Sec. 38-39k. APPEALS. (a) Any person aggrieved by any regulation, order or other action of the commissioner pursuant to sections 38-39a to 38-39*l*, inclusive, or any failure of the commissioner to act as required by said sections may appeal therefrom to the superior court for Hartford county. The court shall conduct its review without a jury and by trial de novo, except if all parties so stipulate, the review shall be confined to the record. Portions of the record may be introduced by stipulation into evidence in a trial de novo as to those parties so stipulating."

The fundamental test by which the status of aggrievement for purposes of qualifying to take an appeal from an administrative order or regulation is determined encompasses a well-settled twofold determination. First, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. *New Haven* v. *Public Utilities Commission,* 165 Conn. 687, 700, 345 A.2d 563; *Sheridan* v. *Planning Board,* 159 Conn. 1, 13, 266 A.2d 396; *Johnson* v. *Zoning Board of Appeals,* 156 Conn. 622, 623, 238 A.2d 413; *Hughes* v. *Town Planning & Zoning Commision,* 156 Conn. 505, 507–508, 242 A.2d 705; *Gregorio* v. *Zoning Board of Appeals,* 155 Conn. 422, 425–26, 232 A.2d 330; *I. R. Stich Associates, Inc.* v. *Town Council,* 155 Conn. 1, 3, 229 A.2d 545; *Krejpcio* v. *Zoning Board of Appeals,* 152 Conn. 657, 660, 211 A.2d 687; *Tucker* v. *Zoning Board of Appeals,* 151 Conn. 510, 514, 199 A.2d 685; *Tyler* v. *Board of Zoning Appeals,* 145 Conn. 655, 662, 145 A.2d 832; see 2 Cooper, State Administrative Law, pp. 538–41.

The plaintiffs contend that their standing to appeal "must be judged by the relevant statutory scheme" and claim in their brief that they "fall well within the class of persons intended to be protected by the statutory scheme." In support of their assertion, they rely upon numerous federal decisions that we find inapposite to the disposition of

this issue under § 38-39k (a) of the General Statutes, which expressly limited the right to obtain judicial review by appeal to "any person aggrieved." Even under federal standards upon which the plaintiffs rely, to obtain judicial review of the action of a federal agency a plaintiff must demonstrate an "injury in fact," economic or otherwise, to acquire standing to sue.[5] *Association of Data Processing Service Organizations, Inc.* v. *Camp,* 397 U.S. 150, 152-54, 90 S. Ct. 827, 25 L. Ed. 2d 184; *Sierra Club* v. *Morton,* 405 U.S. 727, 738, 92 S. Ct. 1361, 31 L. Ed. 2d 636; note, 11 A.L.R. Fed. 556, 560-67, §§ 2, 3. "[A] person who is not injured in fact by governmental action he seeks to challenge should be denied standing, even if he is trying to represent what he believes to be in the public interest." Davis, Administrative Law Text (3d Ed.), p. 439. The United States Supreme Court recently stated that while an organization interested in the problem of environmental or consumer protection may represent its members who are injured by federal administrative action, "a mere 'interest in a problem,' no matter how long standing the interest and no matter how

---

[5] It is noted that the plaintiffs unsuccessfully sought to intervene in the antitrust suit brought by the department of justice against International Telephone and Telegraph Corporation and Hartford Fire Insurance Company. In denying their motion, the United States District Court for the district of Connecticut stated: "[I]t is unnecessary to dwell on the insubstantiality of their interest, which is only what is inherent in their self-assumed role as 'representatives of the public who desire to see that the antitrust laws are enforced.' That does not amount to that 'personal stake in the outcome of the controversy' essential to standing. *Baker* v. *Carr,* 369 U.S. 186, 204 [82 S. Ct. 691, 7 L. Ed. 2d 663] (1962)." *United States* v. *International Telephone & Telegraph Corporation,* 349 F. Sup. 22, aff'd per curiam by the United States Supreme Court sub nom. *Nader* v. *United States,* 410 U.S. 919, 93 S. Ct. 1363, 35 L. Ed. 2d 582.

qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved' within the meaning of the APA."[6]  *Sierra Club* v. *Morton,* supra, 739.

Appeals to the courts from decisions of administrative officers exist only under statutory authority. *Sheridan* v. *Planning Board,* supra; *Bardes* v. *Zoning Board,* 141 Conn. 317, 318, 106 A.2d 160; *Long* v. *Zoning Commission,* 133 Conn. 248, 252, 50 A.2d 172.

As we recently stated in *Hartford Kosher Caterers, Inc.* v. *Gazda,* 165 Conn. 478, 484, 338 A.2d 497, "[t]he concept of standing as presented here by the question of aggrievement is a practical and functional one designed to assure that only those with a genuine and legitimate issue can appeal an order." The determination of aggrievement is a question of fact for the trial court, and the plaintiff has the burden of proving that fact.  *New Haven* v. *Public Utilities Commission,* supra; *Fletcher* v. *Planning & Zoning Commission,* 158 Conn. 497, 503, 264 A.2d 566; *Foran* v. *Zoning Board of Appeals,* 158 Conn. 331, 340, 260 A.2d 609; *Hulbert* v. *Zoning Board of Appeals,* 158 Conn. 187, 195, 257 A.2d 810; *Johnson* v. *Zoning Board of Appeals,* 156 Conn. 622, 624, 238 A.2d 413; *I. R. Stich Associates, Inc.* v. *Town Council,* 155 Conn. 1, 3, 229 A.2d 545; *Hickey* v. *New London,* 153 Conn. 35, 38, 213 A.2d 308; *Krejpcio* v. *Zoning Board of Appeals,* 152

---

[6] Section 10 of the Administrative Procedure Act, 5 U.S.C. § 702, provides: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

Conn. 657, 660, 211 A.2d 687; *Luery* v. *Zoning Board,* 150 Conn. 136, 140, 187 A.2d 247; *Fox* v. *Zoning Board of Appeals,* 146 Conn. 665, 667, 154 A.2d 520.

In four paragraphs of their complaint,[7] the plaintiffs properly pleaded their respective claims of aggrievement. It was the function of the trial court

---

[7] "37. The plaintiffs individually and collectively are aggrieved persons within the meaning of Public Act No. 444 in that their interests as consumers and members of the public have not been protected by the Commissioner as required by that Act.

"38. Plaintiffs Nader and Robertson are aggrieved persons within the meaning of Public Act No. 444 in that the actions of the Commissioner in failing to enforce the substantive and procedural requirements of the Act, in failing to consider the points, evidence and questions submitted by them during the proceedings, in failing to conduct hearings or provide opportunity for public commentary on the conditions imposed in the May 23 order, and in failing to give reasons for such actions have deprived them of their rights set forth in Public Act No. 444 to participate in the exchange offer proceedings.

"39. Plaintiffs Nader, Curtin and Cooper, as residents, citizens and members of the public of the State of Connecticut, and as beneficiaries of the civic and charitable activities of domestic insurance companies, including Hartford, within the State of Connecticut, and their support of community colleges and other educational institutions, such as the University of Hartford are aggrieved persons within the meaning of Public Act No. 444, in that the Commissioner has failed to adequately protect the public interest by preventing the takeover of a domestic insurance company by outside financial interests which cannot be expected to maintain the same or as high a level of civic concern and support and cannot be required to do so by the insurance commissioner by virtue of the order he has entered.

"40. Plaintiff Curtin, as a shareholder of Hartford, Plaintiff Cooper, as a shareholder of ITT, and Plaintiff Robertson, as a policyholder of Hartford, are aggrieved persons within the meaning of Public Act. No. 444 in that the Commissioner has failed to protect their interests by enforcement and application of the procedural and substantive provisions of Public Act No. 444, including notice and hearing on all the terms and conditions of the exchange offer and all material facts relating thereto."

to determine as to each plaintiff, first, whether the plaintiffs' allegations if they should be proved would constitute aggrievement as a matter of law, and, second, if as a matter of law they would constitute aggrievement, then whether each plaintiff proved the truth of his allegations. The conclusions reached by the trial court cannot be disturbed on appeal unless the subordinate facts do not support them. *Fletcher* v. *Planning & Zoning Commission,* supra; *Hickey* v. *New London,* supra.

As to the plaintiff Nader, the court found: (1) "No evidence was presented that Ralph Nader has any 'special interest' in these proceedings." (2) "No evidence was presented on behalf of the plaintiff Ralph Nader that he had suffered or might subsequently suffer any loss or injury as the result of the Commissioner's approval of the exchange offer." (3) "No evidence was presented that Ralph Nader had any special knowledge of, or responsibility for, the insurance industry." (4) "Ralph Nader professed concern for obedience to law and the just disposition of every judicial or administrative proceeding." Although the plaintiffs attacked the first and third of these findings as to the lack of evidence, they printed no evidence in the appendix to their brief to indicate that the court was in error in finding a complete lack of evidence. They did attack the court's second specific finding that Nader presented no evidence that he had suffered or might subsequently suffer any loss or injury as a result of the commissioner's decision but only on the ground that that finding was "in language of doubtful meaning so that its real significance may not appear." We find no merit to this contention and no error in the court's conclusion that Nader failed to prove aggrievement.

The appeal of the plaintiff Curtin requires but brief comment. Not only does it appear that the court correctly concluded that she had failed to prove aggrievement but it further appears that subsequent to the judgment of the trial court and during the pendency of this appeal she tendered her shares of Hartford Fire for ITT series N stock pursuant to the exchange offer approved by the commissioner. The appeal is moot as to her. *Southbury* v. *American Builders, Inc.,* 162 Conn. 633, 634, 295 A.2d 566; 4 Am. Jur. 2d, Appeal and Error, § 179; see *Braasch* v. *Mandel,* 40 Del. Ch. 12, 172 A.2d 271.

Cooper's sole alleged bases were (1) a claim that the commissioner failed adequately to protect the public interest "by preventing the takeover of a domestic insurance company by outside financial interests which cannot be expected to maintain the same or as high a level of civic concern and support"; and (2) a claim that as a shareholder of ITT he is aggrieved by the alleged failure of the commissioner to protect his "interests by enforcement and application of the procedural and substantive provisions of Public Act No. 444." As to Cooper's allegations of aggrievement, the court made findings, which have not been attacked by the plaintiffs, that (1) Cooper did not participate in the proceedings before the insurance commissioner; (2) Cooper, although a party plaintiff, did not even appear or testify at the trial of this action from which he has appealed; and (3) he signed a proxy form which authorized the voting of his ITT shares in favor of the earlier plan of merger, the terms of which were substantially identical to the second plan which was approved by the commissioner. The court concluded that "[t]he plaintiff,

Peter B. Cooper, does not have any 'special interest' in these proceedings, is not aggrieved within the meaning of Gen. Stat. § 38-39k (a), and is without standing to maintain this appeal." We find no error in these conclusions.

We note in passing that before the trial of this case ITT and Hartford Fire jointly filed a demurrer and a motion to erase the plaintiffs' appeal, claiming that the plaintiffs had "failed to allege sufficient facts to show that they are aggrieved parties within the meaning of § 11 of Public Act No. 444." In its memorandum of decision denying the motion to erase, the court (*Rubinow, J.*) found that as to Cooper the complaint was sufficiently broad to encompass a possible claim and proof at trial that Cooper's equity as a shareholder of ITT "may be 'diluted' " by virtue of the share for share exchange of ITT series N convertible preferred stock for Hartford Fire stock, citing *Allegheny Corporation v. Breswick & Co.*, 353 U.S. 151, 77 S. Ct. 763, 1 L. Ed. 2d 726. As we have noted, Cooper neither testified nor even appeared at the trial of this appeal and despite the suggestion in the court's preliminary ruling on the motion to erase that Cooper might at the trial be able to prove aggrievement on the basis of a claim that his stockholder's equity might be diluted, it nowhere appears that Cooper in fact ever made such a claim, much less that he introduced any evidence to prove it. The record contains no suggestion that such a claim was ever advanced by him. There is no reference to such a claim on his behalf in the draft finding, the finding, or the assignments of error. There is not a scintilla of evidence of such a claim in the appendix to the plaintiffs' brief, nor is any such

claim mentioned in the plaintiffs' brief itself, nor was it advanced in argument.[8]

We have already noted Robertson's general allegations of aggrievement including his status as a policyholder of Hartford Fire. The trial court's findings as to what evidence Robertson produced to prove his allegations are contained in three paragraphs of the court's finding: (1) "No evidence was presented that Reuben Robertson has any 'special interest' in these proceedings." (2) "The only evidence offered of Reuben Robertson's alleged aggrievement is his own speculation that, as a result of the exchange offer, Hartford Fire might in the future cease to offer for sale homeowners insurance similar to that now held by him." (3) "Robertson also speculated, as a basis for his claim of aggrievement, that Hartford Fire might cease to offer homeowner's insurance for sale on other than a group, or 'mass merchandising,' basis." Significantly, the plaintiffs did not attack the latter two findings of the court and although they did attack the first finding they printed no evidence in the appendix to their brief which would disclose that the court's finding

[8] It is to be noted that an exhibit in the case discloses that at the annual meeting of the stockholders of ITT held in Houston, Texas, on May 19, 1970 (a date prior to the filing of the plaintiffs' appeal), the stockholders of ITT by a vote of 59,942,269 to 746,488 voted to approve an amendment to the certificate of incorporation of ITT to add further provisions to the terms of issue of the series N preferred shares previously authorized to be used in the exchange offer to the shareholders of Hartford Fire. From all that appears, it may well be that Cooper's ITT shares were in fact voted in favor of the issuance of the series N shares. In any event, if his rights as a stockholder in ITT were in any way illegally prejudiced by the issuance of the series N shares, his proper remedy was by a shareholders' action against ITT, a Delaware corporation, not by an appeal to the insurance commissioner of Connecticut, who had no jurisdiction to approve or disapprove the issuance of stock by a Delaware corporation.

as to the lack of evidence was erroneous. Nor did the plaintiffs assign error to the court's final finding as to Robertson: "There is no evidence in the record that indicates a reasonable probability, or even possibility, that Hartford Fire will in the foreseeable future eliminate or reduce the amounts of homeowner's or other personal lines of insurance made available for purchase by individuals unaffiliated with any program of mass merchandising." On the basis of these findings the trial court concluded: "The plaintiff, Reuben Robertson, does not have any 'special interest' in these proceedings, is not aggrieved within the meaning of Gen. Stat. § 38-39k (a), and is without status to maintain this appeal" and "[n]o credible evidence was presented to support any claim that the conditions included in paragraph 2 of the Commissioner's Finding and Final Order adversely affected in any way the interests of the policyholders or shareholders of Hartford Fire." We find no error in these conclusions of the court. Mere generalizations and fears are not sufficient to establish aggrievement. *Hughes* v. *Town Plan & Zoning Commission,* 156 Conn. 505, 508, 242 A.2d 705; *Joyce* v. *Zoning Board of Appeals,* 150 Conn. 696, 698, 187 A.2d 239.

As we have previously stated in this opinion, it is well-settled law that the question of aggrievement is a jurisdictional one and claims of aggrievement present an issue of fact for the determination of the trial court with the burden of proving aggrievement resting upon the plaintiffs who have alleged it. Neither the size of the corporations involved nor the publicity attendant on the decision of the insurance commissioner nor the prominence of the named plaintiff justifies a departure from established legal principles or a disregard of settled requirements

as to burden of proof, submission of evidence, and the preservation of claimed errors by assignment supported by appropriate briefing, with such supplemental appendices as the case requires.

We find no error in the conclusion of the trial court that the plaintiffs failed to prove the aggrievement which the legislature by the provisions of § 38-39k (a) of the General Statutes has expressly prescribed as a condition precedent to the prosecution of their appeal. In view of this conclusion, it is unnecessary to discuss the plaintiffs' remaining assignments of error.

There is no error.

In this opinion SHAPIRO, LOISELLE and MACDONALD, Js., concurred.

BOGDANSKI, J. (dissenting). I respectfully dissent. I agree that the plaintiff Ralph Nader failed to show personal aggrievement and that the plaintiff Margaret Curtin's appeal became moot when she exchanged her Hartford Fire stock for ITT stock pursuant to the exchange offer approved by the insurance commissioner. But I believe that the plaintiffs Peter Cooper and Reuben Robertson are "aggrieved" by the order of the insurance commissioner as that term has traditionally been construed by this court. The plaintiff Cooper, as a common stockholder of ITT, claims to be aggrieved by the commissioner's order because the convertibility of the preferred stock which ITT exchanged for Hartford Fire stock threatened the "dilution" of his common stock equity. The plaintiff Robertson claims to be aggrieved because the insurance commissioner approved the exchange offer without protecting his interests as a Hartford Fire policy-

holder as required by the statute governing acquisitions of domestic insurance companies. He asserts that ITT failed to comply with self-disclosure requirements, and that conditions imposed by the commissioner for the benefit of Hartford Fire policyholders on the use of Hartford Fire funds were inappropriate and unenforceable.[1]

In 1969, the General Assembly enacted Public Act No. 444 (General Statutes §§ 38-39a through 38-39*l*) in response to the threat of a take-over of the domestic insurance industry by out-of-state conglomerates. The legislature feared that foreign corporations would "raid" the attractive cash reserves of acquired domestic insurance companies, weaken their stability and even remove them from the state, to the detriment of policyholders, securityholders, and the general public. See Finding and Final Order Entered by the Insurance Commssioner, May 23, 1970; Hearings before Joint Standing Committee on Insurance, 1969 Sess., Pt. 1, pp. 17–22; 13 S. Proc.,

[1] In his finding and final order of May 23, 1970, the insurance commissioner imposed ten conditions on the exchange offer, including the following: "(d). Subject to the provision of subparagraph (e), for ten years Hartford shall not in any year transmit funds to ITT in excess of earnings of Hartford for that year as reported on the basis of generally accepted accounting principles. The companies will be free to return to ITT any capital that ITT shall have supplied to Hartford so long as Hartford's surplus is not thereby reduced below that necessary for underwriting purposes. (e). Hartford shall not make any investments within the ITT system without the prior consent of the Connecticut Insurance Department. (f). For at least five years, Hartford shall not reduce its underwritings in any line of insurance substantially below the average of its underwritings in that line during the period 1964-1969. . . . (h). That, in the event the proposed exchange offer is consummated, ITT shall bind itself to fulfill the aforesaid conditions, (a) through (g). (i). That, in the event that the proposed exchange offer is consummated, ITT shall exercise its powers as a stockholder to cause the Hartford to amend its charter so as to make the aforesaid conditions binding on the Hartford and its shareholders."

1969 Sess., Pt. 4, pp. 1975–76; 13 H.R. Proc., 1969 Sess., Pt. 8, pp. 3847–49. Representative Genovesi, for example, referred to a recent take-over in which "[m]illions of dollars of policyholders' surplus was raided by the conglomerate." 13 H.R. Proc., 1969 Sess., Pt. 8, p. 3849. Accordingly, the legislature enacted a statute requiring prior approval by the insurance commissioner of any insurance company acquisitions. Public Act 1969, No. 444 directs him to approve an acquisition only upon a finding that the acquisition would not prevent the insurance company from continuing to write the lines of insurance for which it was licensed, that the interests of policyholders and securityholders of the insurance company would be protected, and that the acquisition would serve the public interest. General Statutes § 38-39d (b). "Any person aggrieved" by the commissioner's approval of an acquisition may appeal to the Superior Court in Hartford County. § 38-39k (a).

"Aggrievement" is the standard jurisdictional prerequisite to an appeal from any administrative agency decision. The requirement simply means that the decision must have an actual adverse effect on a legitimate personal interest of the appellant. See, in addition to the cases cited in the majority opinion, *Sea Beach Assn., Inc.* v. *Water Resources Commission,* 164 Conn. 90, 93–94, 318 A.2d 115; 3 Davis, Administrative Law Treatise § 22.18; 2 Cooper, State Administrative Law, pp. 535–41. Although unsupported "generalizations and fears are not enough" to demonstrate aggrievement; *Joyce* v. *Zoning Board of Appeals,* 150 Conn. 696, 698, 187 A.2d 239; aggrievement is established if "there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has

been adversely affected." *O'Leary* v. *McGuinness*, 140 Conn. 80, 83, 98 A.2d 660; see also *Hartford Kosher Caterers, Inc.* v. *Gazda*, 165 Conn. 478, 485–86, 338 A.2d 497, and cases cited. Moreover, aggrievement does not depend on the magnitude of the injury threatened. A taxpayer, for example, has standing to challenge municipal action which "would . . . result, directly or indirectly, in an increase in his taxes or would, in some other fashion, cause him irreparable injury." *Bassett* v. *Desmond*, 140 Conn. 426, 430, 101 A.2d 294; *Zuckerman* v. *Board of Zoning Appeals*, 144 Conn. 160, 163–64, 128 A.2d 325; see also Davis, Administrative Law Treatise (1970 Sup.) §§ 20.09–5, 22.09–6, 22.21.[2]

Cooper bases his aggrievement on the threatened dilution of his common stock equity. This court has

---

[2] Professor Davis's Administrative Law Treatise (1970 Sup.) § 22.09–5, p. 748, states: "Common law that has endured for centuries is based on the human nature that impels assertion of principle when only a trifle is immediately involved. If A steps on B's land, touches B's person, or points a gun at B, in each instance causing damage or injury so trifling that it is not discernible, B nevertheless has a cause of action for trespass, for battery, or for assault. The common law in each instance allows the plaintiff, on the basis of the trifle, to assert principle. Just as the trifle may be the basis for fighting out principle in the common law, the trifle may be the basis for standing to assert principle against the public officer or the government." Professor Davis concludes that for standing, "[a] small injury should suffice. A choice has to be made as to how much adverse effect should be enough for standing. The requirement could be a large injury, a middle-sized one, or a small one. Much complexity as well as many unsatisfactory results would grow out of requiring an injury to equal litigation expenses or to equal such a jurisdictional minimum as $10,000 for the Supreme Court has properly treated as sufficient a fraction of a vote, a $1.50 poll tax, and a fine of five dollars and costs. . . . Therefore, the choice the federal courts have generally made, that an identifiable injury to an interest of the plaintiff will suffice even if the interest or the injury is a tiny one, should be firmly adopted and clarified." Davis, op. cit. § 22.21, pp. 785–86.

never before had occasion to decide whether such a threatened injury suffices for aggrievement, but that question has been answered affirmatively by the United States Supreme Court. In *Allegheny Corporation* v. *Breswick & Co.*, 353 U.S. 151, 77 S. Ct. 763, 1 L. Ed. 2d 726, minority common stockholders of Allegheny appealed from an Interstate Commerce Commission decision approving Allegheny's issuance of convertible preferred stock. Mr. Justice Frankfurter said (p. 160) that "under relevant notions of standing, the *threatened* [emphasis added] 'dilution' of the equity of the common stockholders provided sufficient financial interest to give them standing." Cooper's grievance is certainly palpable enough to satisfy the legal requirements of aggrievement in Connecticut. *Bassett* v. *Desmond,* supra; *O'Leary* v. *McGuinness,* supra.

My colleagues say that Cooper has not shown aggrievement because he did not present evidence of aggrievement to the Superior Court.[3] But he was not required to do so. When a person is aggrieved as a matter of law, he need not prove aggrievement in fact. *Weigel* v. *Planning & Zoning Commission,* 160 Conn. 239, 247–49, 278 A.2d 766. Similarly, since the necessary facts to show Cooper's aggrievement—his shareholder status and the terms of the exchange offer—were admitted and undisputed, no more evidence of aggrievement was needed. Indeed, since the threat of dilution is

---

[3] That Cooper did not participate in the proceedings before the insurance commissioner does not deprive him of standing to appeal as an aggrieved person. *Fox* v. *Zoning Board of Appeals,* 146 Conn. 665, 666, 154 A.2d 520. Nor is his injury nonexistent because he chose to ignore it when the first merger plan was presented to ITT stockholders. It is undisputed that Cooper has never approved the present exchange offer.

a logical consequence of the admitted and undisputed facts, it is difficult to see what additional evidence Cooper would have offered.

The majority opinion also suggests that if Cooper's rights as an ITT shareholder were illegally prejudiced by the issuance of the series N shares, his proper course of action would have been to bring a shareholders' action against ITT. That argument simply misconstrues the nature of Cooper's claim. He claims that the insurance commissioner, not ITT, acted illegally in approving the exchange of stock, and that he is aggrieved by that exchange. Cooper does not claim that the issuance of the series N shares was illegal. Hence, his proper remedy is to appeal the insurance commissioner's order.

Robertson bases his claim of aggrievement on Public Act No. 444. That statute entitles him, as a policyholder of Hartford Fire, to protection from the abuses which the General Assembly feared might result from conglomerate take-overs of domestic insurance companies. He alleges that the commissioner failed in specific respects to provide the protection mandated by Public Act No. 444 when he approved ITT's exchange offer. He claims, for example, that the conditions imposed by the insurance commissioner to protect Hartford Fire policyholders from a raid on the treasury, set out in footnote 1, are legally and practically incapable of enforcement. If Robertson's allegations are true, he is clearly aggrieved by the commissioner's order.[4] But Robertson was not required

---

[4] *United States* v. *International Telephone & Telegraph Corporation*, 349 F. Sup. 22 (D. Conn.), cited by the majority opinion for the proposition that Robertson's interest is insubstantial, is not pertinent to his present claim of aggrievement. As Judge Blumenfeld

to prove his allegations in the preliminary hearing as to aggrievement, nor did the court permit him to do so. When the General Assembly limited appeals to persons aggrieved, "it could not have been the legislative intent to require the court to determine the merits of the controversy as a preliminary matter, before even entertaining the appeal." *Waterbury Trust Co.* v. *Porter,* 130 Conn. 494, 499, 35 A.2d 837. Since Robertson is aggrieved if his allegations are true, his appeal should not have been dismissed without a hearing on the merits. See *Waterbury Trust Co.* v. *Porter,* supra.

In this case the majority departs from traditional principles of standing and thereby prevents judicial scrutiny of a far-reaching administrative action which is of great public concern. The present case involves the largest and most important insurance acquisition ever made, and probably the largest single corporate acquisition in financial history. The commissioner's approval is the first ever obtained under Public Act No. 444, a statute enacted to ensure protection of the public interest. In the past, when questions of public importance have been presented, this court has not allowed unrealistic rules of standing to bar judicial review. In *Ducharme* v. *Putnam,* 161 Conn. 135, 137–39, 285 A.2d 318, for instance, this court held that despite precedent to the contrary, outmoded concepts of standing would not bar a municipality from challenging the constitutionality of a state statute. The requirement of aggrievement should not be erected

---

was careful to note in that opinion (p. 26 n.3), "[a]lthough the movant Robertson states that he is a Hartford policyholder, the claim of a financial interest is not pressed." Robertson claimed to have standing to intervene solely as a representative of the public.

into a barrier to judicial review. As Chief Justice Vanderbilt of the New Jersey Supreme Court said in a case holding that competitors of a savings and loan association were aggrieved by the banking commissioner's approval of a branch office of the association, "in cases involving substantial public interest, the courts have held that 'but slight private interest, added to and harmonizing with the public interest' is sufficient to give standing . . . . Competing banking institutions may be the only persons with sufficient private interest in harmony with the public concern for the safety of savings and bank deposits to bring the attention of the courts to errors of law in an administrative action granting a license to establish a branch contrary to the standards set by the statute delegating authority to so act. If such banking institutions do not have the necessary standing, who then is there who can or will challenge an administrative decision favorable to the applicant? Without standing in the appellants to invoke the power of judicial review, the Commissioner's action favorable to [the defendant] Colonial, right or wrong, proper or arbitrary, takes on a conclusive character to the posssible great detriment of the people as a whole." *Elizabeth Federal Savings & Loan Assn.* v. *Howell,* 24 N.J. 488, 499, 501–502, 132 A.2d 779.[5]

The courts of this state are in the business of hearing and deciding cases on their merits. The

[5] To like effect, see *Scripps-Howard Radio, Inc.* v. *F.C.C.,* 316 U.S. 4, 14–15, 62 S. Ct. 875, 86 L. Ed. 1229; *F.C.C.* v. *Sanders Bros. Radio Station,* 309 U.S. 470, 476–77, 60 S. Ct. 693, 84 L. Ed. 869; *Associated Industries of New York, Inc.* v. *Ickes,* 134 F.2d 694, 702–705 (2d Cir.), dismissed as moot, 320 U.S. 707, 64 S. Ct. 74, 88 L. Ed. 414; *Scanwell Laboratories, Inc.* v. *Shaffer,* 137 U.S. App. D.C. 371, 424 F.2d 859, 866–67. See also 3 Davis, Administrative Law Treatise § 22.05.

requirements of standing must not be applied so as to become an obstacle to judicial review of administrative decisions affecting the people of this state.

I would find error in part and order a hearing on the merits of the claims of the plaintiffs Cooper and Robertson.