[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal taken by the plaintiffs R. David Sanders (Sanders), Theodore Ruderman (Ruderman) and Bethany Farms Inc. (BF Inc.) from a decision of the Inland Wetland Commission of the Town of Bethany (BIWC).
The defendant BIWC has filed the instant motion to dismiss this appeal for lack of subject matter jurisdiction to hear and decide this appeal for the reasons set out hereafter.
At this point it is helpful to refer briefly to the complaint. It alleges that the plaintiff BF Inc. is the owner of a two hundred and thirty (230) acre parcel of real estate known as Bethany Farms on Bethmour Road in Bethany, (hereinafter the subject property), that in September 1990 the plaintiffs Sanders and Ruderman as the then owners of the subject property applied to the defendant BIWC for a wetlands permit to conduct regulated activities associated with a proposed subdivision of the subject property which application was denied on February 12, 1991 for twenty-three reasons, that thereafter Sanders and Ruderman CT Page 7043 submitted a second application to the BIWC which addressed the twenty-three reasons given for the denial of the denial of the earlier application, that the BIWC held public hearings on, the second application, that in its decision dated November 30, 1992 the BWIC voted to approve the second application subject to twenty-three conditions, and that notice of its decision thereon was published on November 26, 1992. The plaintiffs go on to allege that this 1992 decision was illegal, arbitrary and an abuse of its discretion for ten reasons it sets out. Parenthetically, these two reasons variously allege the lack of substantial evidence to support certain itemized conditions imposed on its approval, a lack of authority to impose certain itemized conditions on its approval and that the record on the second application establishes that the BIWC's reasons for denying The first application have been satisfied and, accordingly, the second application should have been approved" without the illegal conditions as a matter of law." In paragraph 10 it is alleged that Sanders and Ruderman are aggrieved in that they were the applicants for the second application and transferors of the subject property. Paragraph 11 alleges that BF Inc. is aggrieved in that it is the owner of the subject property.
In its motion to dismiss this appeal, BWIC moves to do so, pursuant to Connecticut Practice Book 142, 143 and 145 and22a-43(a) of the General Statutes for the following reasons. Because "on November 22, 1992, three days after the defendant granted the subject wetlands permit" Sanders and Ruderman transferred the subject property to BF Inc. they are not aggrieved by the BWIC's decision "as they are not owners of the property" and, so, they do not have a specific personal and legal interest in it. Moreover the allegations of Sanders and Ruderman in paragraph 10 of aggrievement is similarly deficient in that "it does not specifically allege plaintiff Sanders' and Ruderman's aggrievement." In addition, it is claimed that Sanders and Ruderman "lack standing to appeal [BWIC's] decision because they have not maintained a specific personal and legal interest in the subject property throughout the course of the appeal." "Finally, as to Sanders and Ruderman, it is claimed that their interest as mortgagees "is not a sufficient interest in the property to confer aggrievement nor standing."
As to BF Inc., it is claimed that it is not aggrieved by the BWIC decision because "it was not the applicant for nor the recipient of the permit at issue and because it took title with actual notice of the [BWIC] decision at issue . . . ." The BWIC CT Page 7044 goes on to claim that BF Inc. lacks standing to appeal "because it was not the applicant for nor the recipient of the permit at issue."
The BWIC then claims that the "Plaintiffs' respective failures to have and maintain standing and to adequately plead and prove aggrievement at the initiation and during the pendency of the appeal", accordingly deprives this court of subject matter jurisdiction to hear and decide this appeal." In its motion to dismiss, BWIC refers the court to the attached affidavit of an attorney it retained to make a limited title search of the Bethany Land Records (which affidavit it incorporates in its motion) together with certain attachments to that affidavit. All the parties have filed comprehensive briefs on the motion.
"Subject matter jurisdiction is the power of the court to hear and determine cases of the general class to which the proceedings in question belong." Shea v. First Federal Savings 
Loan Assn. of New Haven, 184 Conn. 285, 288 (1981); Lauer v. Zoning Commission, 220 Conn. 455, 460 (1991). Once the matter of lack of jurisdiction of a court is raised, it must be disposed of. See e.g. Carten v. Carten, 153 Conn. 603, 610 (1966). A motion to dismiss is the proper vehicle to assert the lack of subject matter jurisdiction. Practice Book 142, 143. Where it must be decided whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. Killingly v. Connecticut Sitting Council, 220 Conn. 516, 522
(1991); Demar v. Open Space Conservation Commission, 211 Conn. 446, 425 (1989).
General Statutes 22a-43(a) provides that "any person aggrieved . . ." may appeal to the Superior Court. The question of aggrievement is a jurisdictional one and claims of aggrievement present a question of fact for the determination of the trial court with the burden of proving aggrievement resting upon the plaintiffs who have alleged it." Nader v. Altermatt, 166 Conn. 43,59 (1974). Our Appellate Court has said that "The issue of standing implicates the court's subject matter jurisdiction. . . Central to establishing standing in some allegation that the plaintiff has been aggrieved by the action of the [commission]." Double I Limited Partnership v. Glastonbury, 14 Conn. App. 77, 80
(1988), see D.S. Associates, 27 Conn. App. 508, 511 (1992). "The question of standing is essentially one of aggrievement." Munhall v. Inland Wetlands Commission, 221 Conn. 46, 51 (1992). CT Page 7045
"It is fundamental that appellate jurisdiction in administrative appeals is created only by statute and can be acquired and exercised only in the manner prescribed by statute. Charles Holdings, Ltd. v. Planning Zoning Board of Appeals,208 Conn. 476, 479, 544 A.2d 633 (1988). Pleading and proof that the plaintiffs are aggrieved within the meaning of the statute is a prerequisite to the trial court's jurisdiction over the subject matter of the appeal. Beckish v. Manafort, 175 Conn. 415, 419,399 A.2d 1274 (1978). The claims of aggrievement by these plaintiffs presented an issue of fact for the determination of the trial court. Hickey v. New London, 153 Conn. 35, 38,213 A.2d 308 [1965]. The burden of proving that they were aggrieved was on these plaintiffs. London v. Planning Zoning Commission,149 Conn. 282, 284, 179 A.2d 614 [1962]." New Haven v. Public Utilities Commission, 165 Conn. 687, 700, 345 A.2d 563 (1974).
"The fundamental test for determining aggrievement encompasses a well-settled two-fold determination: first, `the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision.' Nader v. Altermatt, 166 Conn. 43, 51, 347 A.2d 89 [1974]. Mystic Marinelife Aquarium, Inc. v. Gill, 175 Conn. 483, 493,400 A.2d 726 (1978)." Munhall v. Inland Wetlands Commission, 221 Conn. 46,50-51 (1992). Huck v. Inland Wetlands Watercourse Agency,203 Conn. 525, 530 (1987). "Aggrievement is established if "there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." Huck v. Inland Wetlands Watercourse Agency, supra, Hall v. Planning Commission, 181 Conn. 442, 445 (1980).
"The question of standing is essentially one of aggrievement. Beckish v. Manafort, 175 Conn. 415, 419,399 A.2d 1274 (1978). `The concept of standing as presented here by the question of aggrievement is a practical and functional one designed to assure that only those with a genuine and legitimate interest can [pursue] an [action in court].' Hartford Kosher Caterers, Inc. v. Gazda, 165 Conn. 478, 484, 338 A.2d 497 (1973).
`Standing is the legal right to set the judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the CT Page 7046 court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy.' (Internal quotation marks omitted.) Unisys Corporation v. Department of Labor, 220 Conn. 689, 693,600 A.2d 1019 (1991)." Munhall v. Inland Wetlands Commission, supra, 54-55. "In order to have standing to bring an administrative appeal, a person or entry must be aggrieved." New England Rehabilitation Hospital of Hartford Inc. v. CHHC, 226 Conn. 105,120 (1993). "Standing [however] is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of subtantive rights. Rather, it is a practical concept designed to insure that counts and parties are not vexed by suits brought to vindicate nonjusticiable interests. . . ." Board of Pardons v. Freedom v. Information Commission, 210 Conn. 646, 648-649 (1989); Light Rigging Co. v. Department of Public Utility Control,219 Conn. 168, 172 (1991). The fundamental aspect of standing is that it focuses on the party trying to get his complaint before the court and not on the issues he wishes to have adjudicated and where standing is in issue the question is whether the person whose standing is challenged is a proper party to request, an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits the plaintiff has a legally protected interest that the defendant's action has invaded. Mystic Marinelife Aquarium, Inc. v. Gill, 175 Conn. 483,492 (1978).
At the hearing on the motion to dismiss the court heard testimony and exhibits were introduced. Sanders and Ruderman purchased the subject property in Bethany, containing about 227.876 acres, when they acquired it together with 44.197 acres of abutting property in Woodbridge from Gannett Outdoor Co. of Connecticut (Gannett) by warranty deed in 1987. The total purchase price at the time was $540,000.00 of which $415,800.00 was attributable to the Bethany portion and $124,200.00 was attributed to the Woodbridge portion. Also at that time Sanders and Ruderman executed a purchase money mortgage to Gannett covering both the Bethany and the Woodbridge property in the amount of $405,000.00. Thereafter, Sanders and Ruderman, as owners, applied to the BWIC for a Wetlands permit to conduct regulated activities associated with a proposed subdivision on the subject Bethany property. The first application was denied in 1991 for 23 reasons but the second one was approved by the BWIC by decision dated November 30, 1992 subject to 23 conditions and notice of this decision was published on November 26, 1992. CT Page 7047 Thereafter, Sanders and Ruderman sold the 221.876 acres in Bethany by a warranty deed to BF Inc. which was recorded in the Bethany Land Records on December 9, 1992. They, however, retained title to the abutting 44.197 acres in Woodbridge.[1]
Their warranty deed to BF Inc. was subject, Inter alia, to the Gannett mortgage and the BIWC [BWIC] permit of November 30, 1992 which permit was recorded on December 4, 1992 in the Bethany Land Records. A certified copy of the BWIC permit is attached to affidavit of the attorney title examiner's affidavit which, in turn, is attached to the motion to dismiss. The permit is also an exhibit in evidence. BF Inc. gave a mortgage of $170,000.00 to Sanders and Ruderman on the Bethany property which was recorded on December 9, 1992 in the Bethany land records. Both Sanders and Ruderman have agreed to assist BF Inc., including materially, in obtaining any other approvals necessary. For the development of the subject property, Charles Spath is the president and sole shareholder of BF Inc. He is a principal in the firm of Spath-Bjorkland Associates, Inc. Consulting Engineers which prepared the plans submitted to BWIC on this application. Although not an owner at the time of the hearings on this application, he attended the hearings and he is familiar with the terms and conditions of the BWIC permit involved in this appeal. Spath has three other developments in Connecticut which he is actively interested in developing. Spath intends to pursue the appeal in this case in developing the subject property.
We turn first to the issue of aggrievement of BF Inc. BWIC argues that BF Inc. has not pleaded aggrievement, and even if it is alleged it has not been proven and also if aggrievement has been demonstrated the element of its having standing has not. The court disagrees. Turning first to aggrievement, it seems fair to say, keeping in mind, all the allegations of the complaint as outlined above that can be said to apply to BF Inc., that it has alleged aggrievement in its capacity as the owner of the subject property. In construing the plaintiff's allegations on the matter of their efforts to prove aggrievement in the evidentiary hearing held in this case where aggrievement is alleged it is submitted that some liberality is fairly to be employed. After all our pleading rules were designed to avoid the pitfalls of "unnecessary formality." See Dreier v. Upjohn Co., 196 Conn. 242, 246 (1985). "A formalistic or highly technical construction of pleadings is contrary to a proper view of pleading requirements. O'Brien v. Seyer, 183 Conn. 199,210-211 (1981); Leabo v. Leninski, 2 Conn. App. 715, 720 (1984). CT Page 7048
The complaint alleges that BF Inc. is the owner. As the owner BF Inc. maintains that the decision of the BWIC appealed from injured its interest as owner as set out, specifically including the claims made in paragraph 9 of the complaint. It was the owner at the time the instant appeal was taken and BF Inc. was the owner at that time. A person does not become aggrieved until the board involved has acted. Huck v. Inland Wetlands Watercourse Agency, supra. 530; Hall v. Planning Commission 181 Conn. 442, 444 (1980); Foran v. Zoning Board of Appeals, 188 Conn. 331, 336 (1969). It is correct that BF Inc. was not the owner at the time the application was filed nor was it the owner of the time of the decision. We believe that Fuller v. Planning Zoning Commission, 21 Conn. App. 340 (1990) adequately addresses these claims although Fuller is a "statutory" aggrievement situation. In Fuller the Appellate Court found that Fuller was statutorily aggrieved under General Statutes8-8 by the adverse decision of the defendant commission because her property either abutted or was within a radius of one hundred feet of the affected property. After Fuller appealed that decision she transferred her property to one Kores. The latter appealed to the Superior Court to be permitted to be substituted in the pending appeal in place of Fuller and that application was denied finding Kores was not aggrieved. The commission argued inter alia that Kores was not aggrieved when the appeal was commenced and so that she could not succeed to the Fuller's interest in the appeal as he bought with full knowledge of the pendency of Fuller's claim. In addition, it argued that Fuller lost the right when she transferred the property and so Fuller could not "transfer" aggrievement to Kores. The Appellate Court rejected these claims. It seems reasonable that the rationale of Fuller should apply to this case in passing on BWIC's claims as to BF Inc. While BF Inc. was not the owner when the instant wetland application was heard and decided it was the owner when the appeal permitted by 22a-43(a) was taken. As such owner, BF Inc. had a specific, personal and legal interest in the subject matter of the decision as distinguished from a general interest such as is the concern of all members of the community. That interest had been has been specially and injuriously affected by the BWIC decision because of the allegation of the lack of authority on the part of the BWIC to impose those several conditions referred to in paragraph 9 of the complaint. These are specific in questioning certain permit conditions and modification BWIC concerning authority bonding, insurance, easements, engineering approvals and further BWIC approvals. CT Page 7049 They are claims that affect BF Inc.'s use of the subject property directly in a manner that makes more difficult its use as proposed by this owner. BF Inc.'s interest is a specific personal and legal interest as distinguished from a general interest, such as is the concern of all members of the community as a whole. No claim appears to be made by the BWIC that these allegations are not made in good faith. It seems that the imposition of such conditions can fairly be said to make the development of the subject property more difficult and/or more time-consuming for the owner, which parenthetically also has mortgage obligations on it. These specific claims of lack of authority are not mere generalizations and fears that serve to bar aggrievement. See e.g. Walls v. Planning Zoning Commission, 176 Conn. 475, 478 (1979).
The BWIC points to its Regulations 11.9 which provides: "No permit shall be assigned or transferred without the written permission of the Agency [BWIC]" and that no such written permit was obtained nor was the permit ever transferred. In this connection BWIC points out the warranty deed transferring the property to BF Inc. transfers it "subject to" the BWIC permit and not "together with" the permit. In doing so it suggests that the "together with" language "would indicate some benefit accruing to the property by virtue of the permit while the "subject to" language does not." Thus, BWIC argues that BF Inc. cannot be aggrieved by its decision because Sanders and Ruderman are the permittees, not BF Inc. The court does not agree. This appeal is not an action to construe conveyances or deeds and it is apparent that Sanders and Ruderman intended to and did transfer their rights and/or benefits in the permit involved to BF Inc. There is a serious question of BWIC's apparent position in its brief on its regulation 11.9 upon which the briefs are not illuminating. That concerns the ultimate validity of 11.9 in proscribing a transfer in this fashion of a land-use permit. The restraint on the transfer of this land-use permit contended for poses serious issues of its validity on the facts of this case insofar as they are presently disclosed. In any event, this court concludes, on this motion, that 11.9 is no bar to a transfer of the permit.
We are of the opinion also that BF Inc. demonstrated standing to be a party plaintiff to this appeal. This practical and functional concept of standing with the requisite that only those with a genuine and legitimate interest can pursue such an action is satisfied here. See e.g. Munhall v. Inland Wetlands CT Page 7050 Commission, supra, 54-55; Hartford Kosher Caterers, Inc. v. Gazda, 165 Conn. 478, 484 (1973); BF Inc. itself has a real inteest [interest] in the subject matter of the controversy in this cause of action. Ibid.
As to BF Inc., the court concludes that it has alleged and proved aggrievement and has standing to pursue this action.
At this point we turn to BWIC's claim that Sanders and Ruderman lack standing and aggrievement to have commenced and maintained this appeal. In addition to claiming that Sanders and Ruderman have not pleaded aggrievement, because they "have only set forth their status vis a vis the application and the property" BWIC contends that they have not proven it. Acknowledging that they were the owners at the time of the application and at the time of its decision and that they "may have been aggrieved at the time of the [BWIC] decision. . ." BWIC argues that nevertheless ". . . after transferring the property to BF Inc., Sanders and Ruderman divested themselves of the property interest from which they could have claimed aggrievement." BWIC argues that once they have transferred the property they can no longer sufficiently plead and prove that they own property which was specifically and injuriously affected by the BWIC decision and, in any event, they cannot obtain any practical relief. BF Inc. not only contends that it has pleaded and proven aggrievement and that it has standing but, in doing so, contends that our case law has found persons other than owners to be aggrieved. This is true. For example, see Primerica v. Planning Zoning Commission, 211 Conn. 85, 94, 95
and cases there cited; (1991) (lessee); Shapero v. Zoning Board,192 Conn. 367, 376 (1984) (contract vendee); Smith v. Planning 
Zoning Board, 203 Conn. 317, 323 (1987), see generally Rohan Zoning and Land Use Controls, 51.02[2], 4 Anderson American Law of Zoning 27.10-27.14.
Our Supreme Court has not set forth "a precise standard that defines the precise interest a nonowner must be possess" to be aggrieved. Primerica v. Planning Zoning Commission, supra. 93. The case before us is readily distinguishable from D.S. Associates, et al. v. Planning Zoning Commission, 27 Conn. App. 508
(1992) where the Appellate Court noted that the appellant D.S. Associates had no interest in the subject property at the time the application was filed with the appellee commission or at anytime thereafter. See D.S. Associates, et al. v. Planning 
Zoning Commission, supra n. 6. Here Sanders and Ruderman were the CT Page 7051 owners at the time of the application until and after the BWIC decision. It is quite true that after their conveyance to BWIC that they were no longer the owners, certainly not in the sense of owning in fee simple. They, however, as mortgages under our law (by statute and common law) are deemed to have the legal title to the mortgaged property and the mortgagor has the equitable title also referred to as the equity of redemption. Conference Center Ltd. v. TRC, 189 Conn. 212, 218 (1983); Barclays Bank of New York, 20 Conn. App. 163, 166 (1989). They clearly have, as a result of their transfer of the subject property retained a specific, personal and legal interest in themselves in it. This quality of the legal interest in the subject property in them personally as mortgagees in it is quite significant under our law. We note in passing that a note and a mortgage on real estate given to secure it are separate instruments executed for different purposes and that in this jurisdiction an action for foreclosure of the mortgage and upon the note are regarded and treated, in practice, as separate and distinct causes of action, although both may be pursued in a foreclosure action. Hartford National Bank Trust Co. v. Kotkin, 188 Conn. 579, 581 (1981). Thus, there continues to be a specific, personal and legal interest in Sanders and Ruderman after their transfer of the subject property to BF Inc. This interest is adversely affected by "illegal" conditions alleged in the complaint such as are set forth in paragraph nine. These allegations specifically include reference to specific portions and/or conditions of the BWIC permit in issue. That permit is in evidence as an exhibit. The illegality contended for on each instance is specific in questioning certain permit conditions and modifications concerning BWIC authority concerning bonding, insurance, easements, engineering approvals and further BWIC approvals. As outlined in the plaintiff's complaint these are not broadside but specific. They affect the use directly of the subject property in a way in which one or more of them makes more onerous their interest and the legal benefits to be derived from their substantial interest in the property as mortgagees. Their interest in the subject property also appears to be supplemented by an oral agreement with BF Inc. to assist them materially in trying to obtain the approvals necessary to develop this property.
The extent to which a party other than the owner "is aggrieved depends upon the circumstances of each case, because the concept of standing is a practical and functional one designed to ensure that only those parties with a substantial and CT Page 7052 legitimate interest can appeal an order. "[citations omitted]." Primerica v. Planning Zoning Commission, supra. 93.
Sanders and Ruderman are each found aggrieved and have standing to pursue this appeal.
In sum, BF Inc., Sanders and Ruderman are each found aggrieved and have standing to pursue this appeal.
The motion to dismiss this appeal is hereby denied on all grounds advanced.
Arthur H. Healey State Trial Referee