CONNECTICUT BUSINESS AND INDUSTRY ASSOCIA-
TION, INC., ET AL. *v.* COMMISSION ON HOSPITALS
AND HEALTH CARE ET AL.
(13769)

SHEA, GLASS, DUPONT, SPALLONE and NORCOTT, Js.

Argued March 1—decision released May 1, 1990

*Brian J. Donnell,* with whom was *Francis J. Mootz III,* for the appellants (plaintiffs).

*Thomas J. Ring,* assistant attorney general, and *William J. Doyle,* with whom were *J. Michael Eisner, Paul E. Knag, H. Kennedy Hudner, Charles W. Peterson, Stephen E. Ronai, Theodore M. Space, Sally S. King, Michael Kurs, Ellen S. Aho* and, on the brief, *Clarine Nardi Riddle,* attorney general, *Richard J. Lynch,*

assistant attorney general, *Mary A. Crossley, Paul D. Sanson, Richard A. O'Connor, Michael S. McKenna, Jeffrey Sienkiewicz, Elliott B. Pollack, David R. Levett* and *Frank W. Murphy,* for the appellees (defendants).

SHEA, J. The plaintiffs filed thirty-two appeals from final decisions of the defendant commission on hospitals and health care (CHHC) issued on December 6, 1988, establishing the rates to be charged for the fiscal year commencing October 1, 1988, by the thirty-two hospitals named as additional defendants in the appeals. Upon motions by the defendants, the trial court dismissed the appeals for lack of subject matter jurisdiction, concluding that the plaintiffs lacked standing under General Statutes § 19a-158,[1] which specifically authorizes appeals from CHHC decisions by "[a]ny health care facility or institution," and that, in any event, they were not "aggrieved," as required for an appeal under both § 19a-158 and General Statutes § 4-183 (a),[2] the latter of which the plaintiffs had relied upon in bringing these appeals. We do not address the first ground of the decision, but agree with the trial

[1] General Statutes § 19a-158, when these appeals were commenced, provided: "APPEALS. Any health care facility or institution and any state health care facility or institution aggrieved by any final decision of said commission under the provisions of sections 19a-145 to 19a-156, inclusive, or sections 19a-165 to 19a-165q, inclusive, may appeal therefrom in accordance with the provisions of section 4-183, except venue shall be in the judicial district in which it is located. Such appeal shall have precedence in respect to order of trial over all other cases except writs of habeas corpus, actions brought by or on behalf of the state, including informations on the relation of private individuals, and appeals from awards or decisions of workers' compensation commissioners."

[2] General Statutes § 4-183 (a), when these appeals were commenced, provided: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal under this chapter, provided, in case of conflict between this chapter and federal statutes or regulations relating to limitations of periods of time, procedures for filing appeals or jurisdiction or venue of any court or tribunal, such federal provisions

court in regard to the second ground, the failure of the plaintiffs to establish aggrievement. Accordingly, we find no error.

The facts, which were presented to the trial court in the complaint and in affidavits and exhibits submitted in conjunction with the motions to dismiss, are not disputed. The plaintiffs are the Connecticut Business and Industry Association, Inc., which represents employers who provide health insurance to their employees; Blue Cross and Blue Shield of Connecticut, Inc., an insurer that provides health insurance to those insured under the policies it has issued; and the Insurance Association of Connecticut, a trade association whose members are domestic insurers that provide health insurance to their policyholders.

During August and September, 1988, CHHC issued the 1989 rate orders, applicable to each Connecticut hospital for the fiscal year October 1, 1988, to September 30, 1989. These rates were established in accordance with formulae set forth in the statutes and regulations as applied to the data concerning its past financial operations that each hospital is required to submit to CHHC in order to implement the prospective payment system adopted in 1984 for hospitals in this state. See General Statutes §§ 19a-165 through 19a-165v. Thirty-two of the hospitals made timely requests for reconsideration of their rate orders. Each rate order had set forth the date on which a public hearing would be scheduled if a particular hospital should request reconsideration of its rates. CHHC granted the

shall prevail. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy."

An amendment to this provision became effective on July 1, 1989, after these appeals had been commenced, which, inter alia, removes the reference to a "contested case."

requests for reconsideration and issued temporary stays of the rate orders. The plaintiffs sought to participate in the reconsideration proceedings, but CHHC denied them this opportunity. During October, 1988, CHHC cancelled the public hearings on reconsideration that had been previously scheduled and conducted informal negotiations with the hospitals concerning their requests for reconsideration. As a result of these negotiations, CHHC entered into an "agreed settlement" with each hospital regarding its request for reconsideration and revised the original 1989 rate orders by increasing the rates in order to allow the hospitals additional revenue. These settlements were approved in formal decisions issued by CHHC in December, 1988.

The plaintiffs filed appeals from the revisions of the original hospital rate orders effectuated by the settlements. The thirty-two appeals were consolidated for the purpose of resolving the jurisdictional issues raised by the defendants' motions to dismiss. Following the rendition of judgments dismissing each appeal for lack of subject matter jurisdiction, the plaintiffs filed a joint appeal seeking review of that determination.

It is fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved. *Zoning Board of Appeals* v. *Freedom of Information Commission,* 198 Conn. 498, 501, 503 A.2d 1161 (1986); *Hartford Distributors, Inc.* v. *Liquor Control Commission,* 177 Conn. 616, 622, 419 A.2d 346 (1979). Both § 4-183 (a), upon which the plaintiffs rely for authority to appeal, and § 19a-158, which the defendants claim is the exclusive basis for appealing from a CHHC decision, expressly require that one be "aggrieved" by a "final decision" in order to appeal. In the absence of such aggrievement, the appeal must

be dismissed for lack of subject matter jurisdiction. *Local 1303 & Local 1378* v. *Freedom of Information Commission,* 191 Conn. 173, 177, 463 A.2d 613 (1983).

"The fundamental test by which the status of aggrievement for purposes of qualifying to take an appeal from an administrative order or regulation is determined encompasses a well-settled twofold determination. First, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfuly establish that this specific personal and legal interest has been specially and injuriously affected by the decision." *Nader* v. *Altermatt,* 166 Conn. 43, 51, 347 A.2d 89 (1974). The trial court concluded that the plaintiffs had not passed the first part of this test "in that they failed to demonstrate a specific, personal and legal interest in the subject matter of the decision as distinguished from a general interest, such as the concern of all members of the community as a whole." The court found it unnecessary to consider the second part.

We agree with the trial court that the plaintiffs have no interest in the decisions of CHHC revising the hospital rates for the 1989 fiscal year beginning on October 1, 1988, that would satisfy the requirement of aggrievement. The fact that they are obligated contractually to pay the rates established by CHHC in these decisions gives them no more standing than their policyholders or other contractual beneficiaries would have to challenge the decision. These beneficiaries, in turn, have no greater interest than those members of the general public who have no health insurance and must pay the rates established. The financial impact of an increase in hospital rates is borne by all members of

the public when they require hospitalization and are presented with bills for the services rendered. The agreements the plaintiffs have made to bear or share these hospitalization expenses with their policyholders or other contractual obligees do not create aggrievement for the purpose of an appeal unless those who pay directly for their hospitalization would be similarly aggrieved.

The plaintiffs do not contend that members of the public can be deemed aggrieved by an increase in hospital rates so that they would be entitled to appeal. The rate setting procedures designed by the legislature in establishing the prospective payment system for hospitals do not provide for public hearings before those rates are initially established by CHHC. The rates are determined entirely upon the basis of the data submitted by the hospitals. General Statutes §§ 19a-165a and 19a-165b. Such a procedure does not constitute a "contested case," which is a prerequisite for an appeal pursuant to § 4-183 (a), upon which the plaintiffs rely. It is not a proceeding "in which the legal rights, duties or privileges of a party are required *by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held* . . . "; (emphasis added); and thus does not satisfy the definition of a "contested case" in General Statutes § 4-166 (2).[3] The statutes provided no opportunity for hearings before the initial rate orders were issued by CHHC in August and

[3] General Statutes § 4-166 (2), when these appeals were commenced, provided: "(2) 'Contested case' means a proceeding, including but not restricted to rate-making, price fixing and licensing, in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held, but does not include hearings referred to in section 4-168."

An amendment to this provision became effective on July 1, 1989, which excludes "proceedings on a petition for a declaratory ruling under section 4-176" from this definition.

September, 1988, and the record does not indicate that hearings were actually held. The plaintiffs, whose aggrievement status is no greater than that of the public, therefore, could not have appealed from those orders.

The plaintiffs maintain, however, that, because the defendant hospitals, after receiving the original rate orders, requested hearings before CHHC, pursuant to § 19a-165q-45 (b)[4] of the Regulations of Connecticut State Agencies, for reconsideration of the rates initially established, the plaintiffs would have had the opportunity to participate at such hearings if they had been held. Subdivision (4) of this regulation provides that "payers and other interested parties may participate

[4] Section 19a-165q-45 (b) of the Regulations of Connecticut State Agencies provides: "A hospital may request, within 10 calendar days of issuance of a rate order or within 10 calendar days of modification or denial for items (3) and (4), below, that the commission hold a hearing concerning those items in the rate order as follows:

"(1) Items which were modified or denied by the commission and which were determined pursuant to a provision in the regulations which provides for the hospital to request that an item be considered in determination of the rate order and for the commission to approve, modify or deny such request; or,

"(2) Items which were determined pursuant to a provision in the regulations which specifically provides for the commission to approve, modify or deny an amount provided to the commission by the hospital, except items specified in (3), below, or,

"(3) Items modified or denied pursuant to section 19a-165q-32 (b) (4) of these regulations.

"(4) Modifications to a hospital's rate order by the commission, pursuant to section 19a-165q-28 (b) (6) and (7), of these regulations.

"The hospital's request shall specify in detail the reasons for such request. The commission shall hold such hearing and make a decision as to whether the request will result in a revision of the commission's rate order issued pursuant to section 19a-165q-44 of these regulations no later than 45 days from the date of receipt of the request and additional information that the commission deems is required. At any hearing thereon, payers and other interested parties may participate in accordance with the Commission's rules of practice. If the rate order is revised the hospital will implement such revision no later than 30 days from the date of such commission decision."

in accordance with the Commission's rules of practice." The regulation cannot be construed to elevate the status of payers, such as the plaintiffs, for purposes of aggrievement above that of the general public, however, because it also allows for participation by members of the public as "other interested parties."

We need not determine whether, if the hearings had been held and the plaintiffs had participated in them, they might have been "aggrieved" and, therefore, could have appealed pursuant to § 4-183 (a). All the hospitals settled their disputes with CHHC without the necessity of any hearings, implicitly withdrawing their requests for reconsideration hearings. The plaintiffs, therefore, never were entitled to participate in any hearing to which the regulation relied upon would apply, once the hospitals no longer requested such hearings. Even if the mere filing of such a request were deemed to transform the proceeding before CHHC into a "contested case," General Statutes § 4-177 (d)[5] expressly provides for a disposition of a contested case by an "agreed settlement," the procedure followed by CHHC here. This specific statutory authorization is a sufficient rebuttal of the plaintiffs' claims that CHHC violated their rights by holding informal discussions with the hospitals culminating in settlements rather than rendering a formal decision after a hearing upon each of the thirty-two requests for reconsideration. Absent bad faith, collusion or other improprieties, none of which the plaintiffs here allege, the decision of an agency to settle a disputed case does not violate the rights of anyone, least of all one who is not a party to

[5] General Statutes § 4-177 (d), when these appeals were commenced, provided: "Unless precluded by law, informal disposition may be made of any contested case by stipulation, agreed settlement, consent order, or default."

This provision has been retained without substantive change in the amendment to § 4-177 that became effective on July 1, 1989.

the proceeding. See *Sendak* v. *Planning & Zoning Commission,* 7 Conn. App. 238, 244, 508 A.2d 781 (1986).

We agree with the trial court that the plaintiffs are not aggrieved because they have failed to demonstrate a legal interest in the subject matter of the decisions approving the settlement agreements that can be distinguished from the interest of the general public in hospital rate increases.

There is no error.

In this opinion the other justices concurred.