[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
THE NATURE OF THE PROCEEDINGS
Pursuant to sections 4-176, 4-183, and 19a-158 of the General Statutes, plaintiffs appeal a declaratory ruling issued by the defendant Commission on Hospitals and Health Care (hereinafter "Commission" or "CHHC").
On June 14, 1985, the plaintiffs filed a petition for a declaratory ruling with the Commission (ROR #1; #17; Complaint, par. 18) pursuant to section 4-176. Plaintiffs challenged certain parts of section 19a-165q-2 of the Commission's prospective payment regulations. The plaintiffs contended that the Commission exceeded its authority in adopting section 19a-165a-2, which requires submission of certain patient and physician data. Additionally, plaintiffs objected to the mandatory submission of this same data on grounds that such disclosure would "violate confidentiality rights of patients." (ROR #1; 17).
The original petitioners before the Commission were The Connecticut State Medical Society, The Connecticut Hospital Association, Joseph C. Czarsty, M.D., William A. Whalen, M.D., Joseph P. Zeppieri, M.D., The Greenwich Hospital Association, The Hospital of saint Raphael, Rockville General Hospital, Saint Vincent's Medical Center, and The Sharon Hospital. (ROR #1, Petitioner for Declaratory Ruling.) The Commission admitted only the last five hospitals listed above as petitioners. (ROR #17, Amended petition for Declaratory Ruling.) The Connecticut State Medical Society, The Connecticut Hospital Association, Joseph C. Czarsty, M.D., and William A. Whalen, M.D. requested but were denied party status. (ROR #22, Declaratory Ruling; #26, Petitions of the Connecticut State Medical Society, William A. Whalen, M.D., Joseph C. Czarsty, M.D. and the Connecticut Hospital Association to be added as a party.) The basis of the Commission's decision to deny party status is that these entities and individuals are not health care facilities or institutions within the jurisdiction of the Commission and are not persons whose legal rights, duties or privileges are CT Page 7394 to be determined by the Commission. (ROR #22, p. 7.)
On September 3, 1986 the defendant Commission rendered its declaratory ruling. (ROR #22). The Commission rendered the following conclusions:
 (A) The Commission has ample authority to require the submission of the challenged data;
 (B) The Commission has established adequate safeguards to protect patient and physician confidentiality;
 (C) The information requested serves an important state interest;
 (D) The submission of data on patients hospitalized for psychiatric illness and for drug and alcohol abuse does not violate state or federal law;
 (E) The petitioners' assertion that the challenged data is for purposes other than the development and implementation of the prospective payment system is pure speculation.
 (F) The collection of the challenged data is not overly burdensome.
(ROR #22).
The original petitioners, with the exception of Joseph P. Zeppieri and the Hospital of Saint Raphael, the latter of which withdrew from this appeal on August 12, 1987, appeal the Commission's decision. (Court File, #106). Plaintiffs raise both substantive and procedural issues.
Plaintiffs filed a 72-page brief on April 19, 1988; a reply brief on November 8, 1988 comprised of 33 pages; a supplemental brief on March 26, 1991; and a statement regarding the applicability of Public Act No. 89-371 dated April 9, 1991. The defendant filed a 60 page brief on September 13, 1988; and a supplemental brief on April 9, 1991.
FACTS
The plaintiffs appeal the declaratory ruling issued by the defendant Commission and challenge the collection by the Commission of allegedly confidential medical information purportedly needed to implement, administer, and enforce a CT Page 7395 prospective payment system for hospitals. Plaintiffs claim that the Commission exceeded its authority by requiring submission of certain data listed in section 19a-165q-2 of the Hospital and Health Care Regulations. (ROR #22; Complaint.)
The plaintiffs request that the Commission's decision of September 3, 1986 be reversed or vacated and set aside; that the challenged regulations requiring the submission of patient and physician data be declared unlawful, invalid and unenforceable; that the Commission be ordered to purge its computer files and the files of any agent which collects or processes data of all challenged data elements collected pursuant to section 19a-165q-2 of the Commission's regulations; and that the plaintiffs be provided with any appropriate equitable relief.
ISSUE
(1) Whether the Commission acted illegally, arbitrarily or in abuse of its discretion such that plaintiffs' appeal should be sustained.
JURISDICTION
Standing/Aggrievement
It is fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved. Connecticut Business Industries Assn. Inc. v. CHHC,214 Conn. 726, 729 (1990). (citations omitted). The party claiming aggrievement must demonstrate a specific, personal and legal interest in the subject matter of the decision as opposed to a general interest shared by the community as a whole. State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295, 299 (1987). The party must also establish that this interest has been specially and injuriously affected by the decision. Id. at 300. Aggrievement is established if there is a possibility as opposed to a certainty that some legally protected interest has been adversely affected. Id. at 300. In the absence of such aggrievement, the appeal must be dismissed for lack of subject matter jurisdiction. CBIA v. CHHC, 214 Conn. 726,729-30 (1990) (citation omitted).
Plaintiffs appeal pursuant to sections 4-176, 4-183
and 19-158 of the General Statutes. Section 19a-158
entitled "Appeals' provides that:
Any health care facility or institution CT Page 7396 and any state health care facility or institution aggrieved by any final decision of said commission under the provisions of sections 19a-145 to 19a-156, inclusive, or sections 19a-165 to 191-165q, inclusive, may appeal therefrom in accordance with the provisions of section 4-183, except venue shall be in the judicial district in which it is located. Such appeal shall have precedence in respect to order of trial over all other cases except writs of habeas corpus, actions brought by or on behalf of the state, including informations on the relation of private individuals, and appeals from awards or decisions of workers' compensation commissioners.
Conn. Gen. Stat. 19a-158 (rev'd to 1985) (emphasis added).
 A "health care facility or institution" means any facility or institution engaged primarily in providing services for the prevention, diagnosis and treatment of human health conditions, including, but not limited to, home health care agencies, homemaker-home health aide agencies. . .clinical laboratory or central service facilities serving one or more health care facilities, practitioners or institutions; hospitals; personal care homes; nursing homes; nonprofit health centers; diagnostic and treatment facilities; rehabilitation facilities, and mental health facilities. . . .
Conn. Gen. Stat. 19a-145 (rev'd to 1985).
Only the plaintiff Hospitals fall within the statutory definition of a "health care facility or institution." See Conn. Gen. Stats. 19a-145 and 19a-158. Further the plaintiffs, Connecticut State Medical Society; Joseph C. Czarsty, M.D.; and William A. Whalen, M.D. do not fall within the statutory definition of a "health care facility or institution" as defined in Conn. Gen. Stat. 19a-145, and therefore do not have standing to bring this appeal. Words used in statutes shall be construed according to the commonly approved use of the language. Conn. Gen. Stat. 1-1; Martone v. Lensink, 207 Conn. 296, 302 (1988). Where the CT Page 7397 language used by the legislature is plain and unambiguous, there is no room for statutory construction by the courts and the statute will be applied as its words direct. Kelemen v. Rimrock Corp., 207 Conn. 599, 606 (1988). "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." Donis v. Conn. Board of Examiners in Podiatry, 207 Conn. 674, 683
(1988) (citations omitted).
The language of Conn. Gen. Stat. 19a-158 is clear and unambiguous in its requirement that, in order to appeal a decision rendered by the Commission on Hospitals and Health Care, a plaintiff must be a health care facility or institution. See Connecticut Business and Industry Association, Inc. et. al. v. Commission on Hospitals and Health Care, et. al., D.N. 355112, J.D. of Hartford/New Britain at Hartford, Memorandum of Decision on Motion to Dismiss, July 13, 1989, Schaller, J., aff'd on other grounds214 Conn. 726 (1990).
The remaining plaintiff CHA claims in its brief, p. 65, that it has associational standing to participate as a party in this administrative proceeding, citing Connecticut Association of Health Care Facilities v. Worrell, 199 Conn. 609
(1986),
 since its members have standing to sue in their own right; the interests which CHA seeks to protect are germane to the organization's purpose; and neither the claim asserted nor the relief requested required the participation of individual CHA members in the administrative proceeding.
See (Plaintiffs' brief, p. 67).
The Connecticut Supreme Court in Worrell enunciated a three-part test that must be satisfied before an association will be granted standing to assert the rights of its members, without also asserting injury to itself.
 [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of CT Page 7398 individual members in the lawsuit. . . .Representational standing depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.
Connecticut Assn. of Health Care Facilities. Inc.,199 Conn. at 616.
Plaintiff CHA's members (Hospitals) have standing to sue on their own right as they come under the statutory definition of "health care facility or institution" as defined in Conn. Gen. Stat. 19a-145 and provided for in Conn. Gen. Stat. 19a-158. Therefore, plaintiff has met the first part of the associational standing test enunciated in Worrell.
As pertains to the second prong of Worrell, which requires that the interests CHA seeks to protect are germane to the organization's purpose, CHA's petition for party status reveals objectives set forth in Article I of its bylaws which include in part, to promote the adoption of such policies and practices by member institution as will contribute to maximum operational efficiency. (ROR #26, p. 754). Plaintiff CHA meets the second prong of the Worrell test.
The third element which must be met in order to have associational standing is that neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Plaintiff CHA contends in its brief, p. 67, that the relief sought by the declaratory judgment will "inure to the benefit" of all CHA members. The relief sought by plaintiffs herein will inure to the benefit of all hospitals in the State of Connecticut which come under the purview of the Commission on Hospitals and Health Care Regulations.
Accordingly, plaintiff CHA has met the three-part test of Worrell and therefore has associational standing to bring this appeal.
It is further found that CHA and the individual plaintiff Hospitals are aggrieved by the Commission's CT Page 7399 decision in that they have a specific, personal and legal interest in the subject matter of the decision, and have been specially and injuriously affected by the Commission's decision. See Connecticut Business Industries Assn., Inc. v. CHHC, 214 Conn. 726, 730 (1990).
Scope of Review
The Uniform Administrative Procedures Act governs judicial review of an administrative action. New Haven v. FOIC, 205 Conn. 767, 773 (1988). The scope of that review is very restricted. Id. The court is only to decide whether in light of the evidence, the agency has acted unreasonably, arbitrarily, or in abuse of its discretion. Id. If any reasons support the agency's decision, the decision must be upheld. Griffin Hospital v. CHHC, 200 Conn. 489, 498
(1986).
"`With regard to questions of fact, it is neither the function of the trial court. . .' to retry the case or to substitute its judgment for that of the administrative agency'. . . . `Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . ."' Connecticut Light Power Co. v. DPUC, 219 Conn. 51, 57-58 (1991) citing Griffin Hospital, 200 Conn. at 496.
Although the interpretation of statutes is ultimately a question of law, it is the court's practice to accord great deference to the construction given a statute by the agency charged with its enforcement. Griffin Hospital,200 Conn. at 496, (citations omitted). This principle applies with even greater force where an agency interprets its own regulations. Id. at 497.
DISCUSSION
I. Commission Exceeded Its Authority
A. 1984 Legislation
The plaintiffs initially contend that the Commission has exceeded its authority by requiring hospitals to submit data not necessary to implement, administer or ensure compliance with the prospective payment system under Conn. Gen. Stat. 19a-165a and 19a-165q. Plaintiffs argue in their brief, p. 27, that the Commission's rule making authority is expressly limited under Conn. Gen. Stat. 19a-165q to data CT Page 7400 needed by the Commission in order to implement, administer or ensure compliance with the prospective payment system. Plaintiffs further claim that the Commission's regulations require hospitals to submit data which are not relevant or necessary for the prospective payment system, and therefore the regulations are invalid and in excess of the Commission's statutory authority.
The defendant responds that it has not exceeded its authority in promulgating the challenged regulations citing the legislature's broad grant of authority to the commission to "require hospitals to submit such data as it deems necessary for the development and implementation of the prospective payment system." Conn. Gen. Stat. 19a-165a (rev'd to 1985); see also Griffin Hospital, 200 Conn. at 497-98
(broad grant of authority to CHHC). The Commission also relies on the fact that the legislative regulation committee ratified the regulations. "[L]egislative regulation of a proposed regulation supports the position that the regulation is consistent with the general statutory scheme that the regulation was designed to implement." Texaco Refining 
Marketing Co. v. Commissioner, 202 Conn. 583, 600 (1987); see also Connecticut Hospital Association v. CHHC, 200 Conn. 133,144 (1986).
The Commission also claims that it has statutory and regulatory obligations which necessitate the collection of the information at issue. Specifically, the Commission cites to the requirement of section 19a-165f that each hospital charge for inpatient services according to a fee schedule based on a standard fixed charge per case. To do this, the Commission argues that it classifies patients according to DRG's (Diagnostic Related Groups) and must assign to each DRG a numeric weight calculated from the Connecticut-specific data which the hospitals are to submit. (ROR #22 at 422, Regulations 19a-165q-1(a)(10), 19a-165q-7 (b)).
The Commission also argues that section 19a-165h, which orders the Commission to determine a reasonable level of uncompensated care for each hospital, provides authority for the challenged regulations because in making this determination, a variety of factors which can be determined from the information sought must be reviewed. Also, the Commission argues, the information required by the challenged regulations is necessary for the Commission to assess a hospital's requests for rate increases pursuant to sections 19a-165c(b)(2)(C), 19a-165n, 19a-154 or 19a-155; to adjust for the impact of alternative delivery systems pursuant to section 19a-165j, to enforce the prospective payment system pursuant to sections 19a-165a and 19a-165q and to evaluate CT Page 7401 the prospective payment system pursuant to P.A. 84-315 23.
The Commission also relies on that part of section 19a-165p which allows the Commission to "engage in experiments and demonstration projects with individual hospitals or groups of hospitals" as authority for the challenged regulations. (See Defendant's Brief, September 13, 1988, pp. 19-29).
Plaintiffs claim that much of these justifications for the data are not only not credible but do not appear in the record and were not offered as justifications by the Commission when it issued its decision. (See Plaintiffs' Reply Brief, November 8, 1988, pp. 6-12).
This court is limited to a review of the record. See Martone v. Lensink, 207 Conn. 296, 305-06 (1988).
The record reflects that "[i]n 1984, the Connecticut General Assembly passed `An Act Establishing a Prospective Payment System For Hospitals,' Public Act No. 84-315, which became effective June 5, 1984 . The general procedures to be followed to establish and implement this prospective payment system were codified in Sections 19a-164 through 19a-165q of the Connecticut General Statutes. Conn. Gen. Stat. 19a-164
(a) created a task force to study the development of a prospective payment system. The task force was directed to examine various prospective payment systems, Conn. Gen. Stat.19a-164 (b), and make recommendations to CHHC, if any, `on the development and implementation of a prospective payment system."' (ROR #22, pp. 3-6.)
Pursuant to this act, the Commission was directed to establish a prospective payment system designed to provide quality health care in a cost effective manner, and to create incentives for hospitals to lower the costs of services. Connecticut Senate Proceedings, May 1, 1984, at 2216-2226. In so doing, they were mandated to develop a formula to take into account recommendations of the task force on such factors as intensity and volume of services, uncompensated care, direct and indirect education costs, different costs associated with different illnesses, changes in technology or clinical practice patterns, outliers, peer review mechanisms, discounts for third party payers and health maintenance organizations, out patient service reimbursement, and systems for peer grouping of hospitals. Conn. Gen. Stat.19a-164 (b). In addition, the task force was required to consider the impact such a system might have on the quality of care by studying preventative services such as expanded ambulatory care, and investigating the development of regional CT Page 7402 integrated systems of health care or multi-institutional coordination systems which offer a range of services to consumers in a manner which reduces hospitalization. Conn. Gen. Stat. 19a-164 (d). (ROR #22, pp. 3-6).
Pursuant to Conn. Gen. Stat. 19a-165a, the CHHC is mandated to require hospitals to submit such data as the CHHC deems necessary for the development and implementation of the prospective payment system. Such data shall, include data taken from medical record abstracts and hospital bills. This section also requires that individual patient and physician data identified by proper name or personal identification code shall be kept confidential. (ROR #22, pp. 3-6).
Pursuant to Conn. Gen. Stat. 19a-165q, the CHHC adopted regulations for the implementation, administration, and enforcement of the prospective payment system in April of 1985. The regulations establish a comprehensive set of formulae by which hospital revenues are established. At the core of those formulae are the cost data and patient discharge and billing data to be produced by individual hospitals. This data needs to be submitted sufficiently prior to the time it is utilized for the calculation of a hospital's revenues in order to allow time for collection, correction of errors and analysis. The Diagnostic Related Groups ("DRG") (See Conn. Reg. 19a-165q-1-(10), patient classification system is used to group the patient data into categories based on such information as diagnosis, procedures performed, complications, age and sex of patient and discharge status. The fiscal year commencing October 1, 1986, is the first fiscal year for which a fixed price or charge is prospectively assigned to the DRG's. In establishing the hospitals' FY 1987 rate orders, the CHHC utilized Medicare Principles of Reimbursement in order to establish the patient classification system to which fixed charges are assigned and in order to assign weights to each of these classifications. However, the prospective payment system regulations indicate that the data collection specified in Regulations Section 19a-165q-2 is necessary for the CHHC to fully implement the system.
Regulations Section 19a-165q-7 (b)(2) specifies that the CHHC shall establish a patient classification system with each hospital discharge assigned to a DRG based on the data from the hospital discharge data submitted to the CHHC pursuant to Regulations Section 19a-165q-2. In addition, Regulations Section 19a-165q-7 (b)(3) indicates that the weighting factor assigned to a DRG shall be the weight established by the CHHC based on Connecticut specific information from the hospital discharge and billing data CT Page 7403 submitted to the CHHC pursuant to Regulations Section 19a-165q-2
and only in the absence of such information should Medicare Principles of Reimbursement be utilized. While the CHHC was able to establish FY 1987 rate orders without the challenged data, several factors should be noted. In the absence of the Connecticut data, Medicare data was used. However, Medicare data may not be representative of all payors of hospital services and therefore, may not result in a system as precise, equitable or accurate as the use of Connecticut data would.
Another factor is that the CHHC's need for the data goes beyond the establishment of rate orders. The CHHC has the mandate to investigate alternative systems to provide similar incentives for other types of care, to establish a patient classification system and to evaluate the impact of the system, among other factors. The separate or combined mandates all make the data collection necessary for the complete development, implementation and evaluation of the prospective payment system. (ROR #22, Declaratory Ruling Decision, pp. 3-6).
Plaintiffs are not challenging the enabling statute promulgated by the legislature as giving the Commission improper authority. Rather, plaintiffs are claiming that the Commission in promulgating Regulation Section 19a-165q-2, exceeded its statutory authority given to it under Conn. Gen. Stat. 19a-165 and 19a-165q. Conn. Gen. Stat. 19a-165a provides in pertinent part that "[t]he commission on hospitals and health care shall require hospitals to submit such data as it deems necessary for the development and implementation of the prospective payment system described in sections 19a-165 to 19a-165q, inclusive. Conn. Gen. Stat. 19a-165a (rev'd to 1985) (emphasis added).
Conn. Gen. Stat. 19a-165q, entitled "Regulations for the prospective payment system" provides that "[t]he commission on hospitals and health care shall adopt regulations, in accordance with the provisions of chapter 54 to implement, administer and ensure compliance with the prospective payment system established under sections 19a-165 to 19a-165q, inclusive." Conn. Gen. Stat. 19a-165q (rev'd to 1985).
The dispositive issue in this appeal is whether the requested data is necessary for the development and implementation of the prospective payment system. Furthermore, Conn. Gen. Stat. 19a-165a gives broad legislative authority to the Commission which allows it to require hospitals to submit data to it as it deems `necessary' for the development and implementation of the CT Page 7404 prospective payment system described in sections 19a-165 to 19a-165q inclusive. Griffin Hospital, 200 Conn. 497-98 (1986).
Plaintiffs contend in their brief, p. 26, that all three of their experts, Alan C. Keilly, Professor John D. Thompson and John T. Lynch concurred that in order to implement, administer, and ensure compliance with a DRG model prospective payment system, at most the following data are needed:
Age at discharge Fiscal Year of discharge Length of Stay Sex Hospital ID code Principal and secondary diagnosis Principal and other procedures Patient disposition Psychiatric or rehabilitation unit discharge Charges by department
Plaintiffs in their brief, p. 25, cite to ROR pp. 44-45, 51-53, 90-111, 484-87, and 495-96.
Plaintiffs further contend in their brief, p. 26, that all three of their experts, as stated above, testified that the following data were not necessary in order to implement, administer or ensure compliance with the prospective payment system:
Race Patient Identification number Zip Code Zip Code suffix Attending physician code Operating physician code Principal and other procedure days Admission status Expected principal source of payment Initials, birthdates, and hospital code numbers of physicians and staff.
The Record reveals in part the following explanations given by the Commission in it decision. (ROR #22).
Race — General Statutes 19a-165h directs the CHHC to consider the socio-economic characteristics of the hospital service area in computing the level of uncompensated care for that hospital. Race is a characteristic which falls within this CT Page 7405 parameter; it must be considered in the analysis of levels of uncompensated care as well as in the analysis of the effect of the prospective payment system on provision of hospital care to all who need such care. . . .
(ROR #22, pp. 435-36).
Patient Identification Code — General Statutes 19a-165a requires that all individual patient data identified by personal identification code be kept confidential by the CHHC. In so providing, the statute identifies the need and authority to collect and maintain individual patient data and to associate data with patient code. . . .
(ROR #22, p. 433).
Zip Code and Zip Code Suffix — General Statutes 19a-165c(b) requires the Commission to consider past and projected admissions in determining total allowable inpatient operating costs. Admissions, past and future, are directly affected by a hospital's service area. The zip code and zip code suffix permit identification of a hospital's geographic service area particularly in locales served by a number of competing institutions.
(ROR #22, p. 433).
Attending and Operating Physician — The need to collect data concerning individual physicians is also recognized in C. G. S. 19a-165a, which requires physician personal identification codes to be kept confidential by the Commission. . . .Physicians' individual practice patterns such as the use of ancillary services and the length of stay of patients are forces affecting the cost of patient care. In addition, as Dr. Whelan testified on cross-examination, physician practices can create financial problems for hospitals. . . .
(ROR #22, p. 434).
Principal Procedure Days, Other Procedure Days and Admission Status — Information on a patient's principal procedure days, other procedure days and admission status are necessary to determine the intensity of services, productivity, and different costs associated with difficult illnesses, as well as evaluation of outliers, all of which are required elements to be factored into the formula to compute base year costs. C.G.S. 19a-165b. Additionally, admission status is needed to compare transfers between facilities in analyzing for potential duplicate DRG reimbursements and overlapping treatments. All of these analyses will assist the Commission CT Page 7406 in reviewing the entire system to determine whether different payment systems might be desirable. C.G.S. 19a-165p.
(ROR #22), pp. 434-435).
Expected Principal Source of Payment — The Commission is charged to establish discounts for medical assistance and Medicare payers, and to determine the reasonable level of uncompensated care for both inpatient and outpatient services to assure adequate care to the indigent and uninsured. C.G.S. 19a-165g and 19a-165h. . . .
(ROR #22, 434-435).
This court finds that the Commission has not acted illegally, arbitrarily or in abuse of its discretion in determining that the challenged data as stated above, was necessary for the development and implementation of the prospective payment system as mandated by Conn. Gen. Stat. 19a-165a (Rev'd to 1985) in accordance with the Prospective Payment System established under the 1984 Legislation.
B. 1987 Amendments
Plaintiffs raise the same claim with respect to the 1987 Amendments to the Commission statutes as they do with respect to the 1984 Legislation. Plaintiffs specifically contend in their brief, p. 27, that even fewer data are needed by the Commission under the 1987 Amendments in order to implement, administer or ensure compliance with the prospective payment system.
Any claims based upon subsequent amendments to the 1985 Commission Statutes will not be considered in addressing the issue of the validity of the regulations, as these subsequent amendments were not passed upon by the Commission, and are not properly before this court.
 C. Declaratory Ruling Does Not Inform Plaintiffs or This Court As To Commission's Need For or Authority to Collect Subject Data.
The issue of whether the requested data was necessary to the development and implementation of the Prospective Payment System has been previously addressed above. Insofar as the plaintiffs suggest that the Commission is no longer authorized to establish its own formula under the 1987 legislation, it has also been found above that amendments made subsequent to the 1985 statutes are not properly before this court as they were not passed upon by the Commission, See (ROR #22, p. 419-420). See Conn. Gen. Stat. 4-176
CT Page 7407 (rev'd to 1985 and 1987).
 D. Commission Appears to be Collecting the Challenged Data For Unauthorized Purposes or Uses.
Plaintiffs contend in their brief, p. 35, that the only conceivable purposes in seeking certain data which are not necessary to develop and implement the prospective payment system for hospitals are to allow the Commission to operate as a peer review organization, to maintain area variations in physician practice patterns, or to collect data for study or implementation of a DRG system for physicians.
Plaintiffs have asserted the same claims in their petition to the Commission for a declaratory ruling. See (ROR #22, p. 449). The Commission addressed the plaintiffs concerns as being wholly speculative, and further stated that the challenged data is to be collected because it is necessary to the development and implementation of a prospective payment system. Plaintiffs have offered no evidence in the record to substantiate any of their expressed fears, and therefore, plaintiffs' claim in this regard must fail.
II. Commission's Overly Broad Data Regulations Violate The Constitutional Right to Privacy A. Privacy Rights of Patients and Physicians
Plaintiffs also claim that if the Commission acted within its legislative mandate, the data regulations must be held invalid because they "violate the privacy rights of patients and physicians." (Plaintiffs' Brief, April 29, 1988, p. 37). However, plaintiffs have not demonstrated how they, as hospitals, have standing to raise the privacy rights of others.
Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. It is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. See. e.g., Baker v. Carr, 369 U.S. 186, 204,82 S.Ct. 691, 76 L.Ed.2d 663 (1962); Stern v. Stern,165 Conn. 190, 192, 332 A.2d 78 (1973). These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy'. . . CT Page 7408 provides the requisite assurance of `concrete adverseness' and diligent advocacy.' . . .`Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . ."' Monroe v. Horwitch,215 Conn. 469, 472-73 (1990).
"To establish standing to challenge the constitutionality of a statute one must sustain "he burden of proving that the effect or impact of the challenged statute adversely affects a constitutionally protected right which he has. `This means a right which he proves that he has under the facts of his particular case and not merely under some possible or hypothetical set of facts not proven to exist."' Stern v. Stern, 165 Conn. 190,192 (1973). (Citations omitted).
Plaintiff hospitals and the plaintiff CHA have not claimed that the effect or impact of the challenged regulations and statutes adversely affect a constitutionally protected right held by these plaintiffs. Accordingly, any claim raised by plaintiffs which suggests that patients' and physicians' constitutional right to privacy has been violated are not a viable claim, as plaintiffs do not have standing to raise this issue for or on behalf of patients and physicians.
B. The Commission's Regulations are Overly Broad
Plaintiffs claim that this court should declare that the Commission has adopted regulations which are overly broad and not drafted to protect the privacy rights of Connecticut patients and physicians and therefore are invalid and unenforceable. (Plaintiffs' Brief, p. 44).
Pertaining to the portion of plaintiffs' claim that raises the invalidity of the Commission regulations based upon the affect on the privacy rights of Connecticut patients and physicians, this issue has previously been addressed in the last section.
Plaintiffs "overly broad" claim, although briefed, was not raised in the complaint and therefore will not be addressed by this court. The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise to opposing parties. Farrell v. St. Vincent's Hospital, 203 Conn. 554,557 (1987). (Citations omitted).
III. Commission's Regulations Violate the Personal Data Provisions of Conn. Gen. Stats. 4-190 et seq. and 4-193.
Plaintiffs contend in their brief, p. 50, that the data requested by the Commission pursuant to the challenged Regulations include personal information about patient's medical or emotional CT Page 7409 conditions and diagnosis, and about the medical practices of their physicians, and hence the Commission is subject to the stricture to Conn. Gen. Stat. 4-193 (e) which states "Each agency shall maintain only that information about a person which is relevant and necessary to accomplish the lawful purposes of the agency." Conn. Gen. Stat.4-193 (e) (Rev'd to 1985).
This court finds that the subject data is "necessary for the development and implementation of the Prospective Payment System" under Conn. Gen. Stat. 19a-165a. The Commission has not violated any of the provisions of the Personal Data Act, sections 4-190 et. seq. of the General Statutes.
IV. Compliance with Commission's Regulations Would Breach Accreditation Requirements As Well As Common Law. Contractual and Ethical Obligations.
Plaintiffs next claim in their brief, p. 50, that Hospitals cannot comply with the Commission's challenged regulations without contravening accreditation requirements, breaching ethical duties, and exposing themselves to contractual and common law liability to those persons whose privacy rights have been affected. Plaintiffs further state in their brief, p. 51, that Hospitals are bound by express confidentiality requirements to protect the privacy of patients' medical records. Plaintiffs cite in their brief to "The Joint Commission on Accreditation of Health Care Organization Accreditation Manual for Hospitals (1988)" for the proposition that "`[m]edical records are confidential' and that absent exceptional circumstances not applicable in the present case, `[w]ritten consent of the patient or his legally qualified representative is required for the release of medical information. . . .'" Plaintiffs' Brief, p. 51, citing Manual at p. 102.
This court notes that the Manual cited by the plaintiffs has not been made part of the record and therefore, will not be reviewed by this court. See Persico v. Maher, 191 Conn. 384, 409 (1983).
Additionally, plaintiffs have offered no evidence as to what legal weight, if any, this Manual carries in determining whether a violation of Hospital accreditation requirements has or may occur due to the required disclosure of the requested Data.
V. Compliance with Commission's Regulations Would Violate State and Federal Laws and Regulations Protecting the Rights of Patients Hospitalized for Drug or Alcohol Abuse or Mental Illness. CT Page 7410
A. Mental Illness
Plaintiffs contend on pages 56-57 of their brief, that employees of the Commission, the news media or any interested person would be able to identify an individual patient in many circumstances from data elements being collected by the Commission, including each patient's race, sex, age, diagnosis, zip code suffix, hospital code and attending physician. Therefore, plaintiffs contend that disclosure by hospitals of the requested data, with regard to patients suffering from mental illness exposes the hospitals to potential liability for violation of 52-146d and 52-146e
of the General Statutes.
Plaintiffs specifically claim that the information requested comprises records which contain "names or other descriptive data from which a person acquainted with the patient might reasonably recognize the patient as the person referred to. Conn. Gen. Stat. 52-146d(4)(A)."
Plaintiffs do not contend that the information requested constitutes codes or numbers which are in general use outside of the mental health facility which prepared the communications and records. Conn. Gen. Stat. 52-146d(4)(B).
The statutes provide that:
 Sec. 52-146e. Disclosure of communications. (a) All communications and records as defined in section 52-146d
shall be confidential and shall be subject to the provisions of sections 52-146d
to 52-146j, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient of his authorized representative.
 Sec. 52-146d. Privileged communications between psychiatrist and patient. definitions. (2) "Communications and records" means all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition between the patient and psychiatrist, or between a CT Page 7411 member of the patient's family and a psychiatrist, or between any of such persons and person participating under the supervision of a psychiatrist in the accomplishment of the objectives of diagnosis and treatment, wherever made, including communications and records which occur in or and prepared at a mental health facility;. . .
 (4) "Identifiable" and "identify a patient" refer to communications an and records which contain (A) names or other descriptive data from which a person acquainted with the patient might reasonably recognize the patient as the person referred to, or (B) codes or numbers which are in general use outside of the mental health facility which prepared the communications and records;. . .
 (5) "Mental health facility" includes any hospital, clinic, ward, psychiatrist's office or other facility, public or private, which provides inpatient or outpatient service, in whole or in part, relating to the diagnosis or treatment of a patient's mental condition.
Conn. Gen. Stat. 52-146d e (Rev'd to 1985).
Defendants respond that the Data Regulation explicitly provides that the agency "will not collect a patient's name, address, social security number, date of birth, admission date or discharge date." regulation 19a-165q-2 (c). See Defendants Brief, p. 53.
This court finds that the information requested by the Commission would not require the hospitals to violate section 52-146e of the General Statutes. Section 19a-165q-2 does not contravene the above statute.
Whether a particular statute or regulation applies to a given state of facts is a question of statutory interpretation, which ordinarily presents a question of law. Plastic Distributors, Inc. v. Burns, 5 Conn. App. 219, 225 (1985), (citations omitted).
B. Alcoholism or Drug Abuse
The plaintiffs claim on pages 57 and 58 of their brief that "[t]he federal drug and alcohol legislation mandates that records `of the identity, diagnosis, prognosis, or treatment' of any patient CT Page 7412 suffering from alcoholism or drug abuse `shall. . .be confidential and be disclosed only for purposes and under the circumstances expressly authorized' under the statute. 42 U.S.C. § 290dd-3, 290ee-3. The implementing regulations prohibit hospitals from even disclosing the identity of an individual hospitalized due to alcohol or drug abuse, and the `restrictions on disclosure and use. . .apply whether the holder of the information believes the person seeking the information already has it, has other means of obtaining it, is a law enforcement official, has obtained a subpoena, or asserts another justification for a disclosure or use which is not permitted by these regulations.'42 C.F.R. § 2.13." (Plaintiffs' brief, pp. 57-58).
Both 42 U.S.C. § 290-dd-3(b)(2)(B) and 290-ee-3(b) (2)(B) provide the following:
(2) Whether or not the patient, with respect to whom any given record referred to in subsection (a) of this section is maintained, gives his written consent, the content of such record may be disclosed as follows: (A). . .
(B) To qualified personnel for the purpose of conducting scientific research, management audits, financial audits, or program evaluation, but such personnel may not identify directly or indirectly, any individual patient in any report of such research, audit, or evaluation, or otherwise disclose patient identities in any manner.
42 U.S.C. § 290-dd3(b)(2)(B) and 290ee-3(b)(2)(B).
Plaintiffs contend that the Commission in its declaratory ruling, without an explanation, stated that it is "clearly exempted" from the Federal Drug and Alcohol Requirements by an exception which would allow disclosure of information.
Record Item 22, p. 446 of the Commission's ruling reveals in pertinent part the following:
 (B) To qualified personnel for the purpose of conducting scientific research, management audits and its financial audits. . .
(ROR #22, p. 446-470 (emphasis in original).
Defendants contend in their brief, pages 54-56 that the Commission's determination that its administration of the prospective payment system plainly falls within the scope of the statutory exception for the conduct of `management CT Page 7413 audits' and `financial audits' is firmly supported by the federal regulations which implement these statutes. Defendants specifically cite to 42 C.F.R. § 2.51-1 and 42 C.F.R. § 2.54. The October 1, 1985 edition of the Federal Regulations provide in pertinent part as follows:
[EDITORS' NOTE: THIS ARTICLE IS ELECTRONICALLY NON-TRANSFERRABLE.]
Defendants claim that the very existence of Federal Regulation 42 C.F.R. § 2.54 (b) and the procedure it requires shows that the Commission's collection and analysis of patient data is precisely the kind of governmental function which Congress intended to permit under the statutory exception for research audits and evaluations contained in both 42 U.S.C. § 290dd-3 and 42 U.S.C. § 290ee-3. (Defendants' Brief, p. 56).
Plaintiffs have made an additional claim in their Reply brief, p. 28, that the provisions in the Federal Drug and Alcohol Regulations relied upon by the Commission are inapplicable and, in any event, have been repealed. Plaintiffs claim specifically that defendants have cited to sections of C.F.R. which have been repealed and superseded, and contend that it is even clearer under the current Federal Drug and Alcohol Regulations that disclosure of the subject data to the Commission is prohibited.
At the time the Commission rendered its decision on September 3, 1986, (ROR #22), the October 1, 1985 edition of the Federal Regulations were in effect. Therefore, any claims based upon subsequent amendments to C.F.R. or U.S.C. will not be considered in addressing the issue of whether the Federal Regulations prevent hospitals from disclosing the identity of patients, as these subsequent amendments were not passed upon by the Commission and are not properly before this court.
Pertaining to plaintiffs' claim that the Federal Regulations prohibit hospitals from disclosing the requested Data, this court finds the Commission's requested data is being collected for the purpose of conducting management audits or financial audits pursuant to the exception listed under 42 U.S.C. § 290dd-3 (b)(2)(B) and 290ee-3(b)(2)(B).
VI. Both the Commission's Denial of Party Status to Four of the Plaintiffs and Its Refusal to Admit the Proposed Contract for Data Collection Into Evidence are Grounds for Reversing the Declaratory Ruling. CT Page 7414
 A. Denial of Petitions for Party Status of CSMS, CHA and Two Individual Physicians Violated the Statutory and Constitutional Due Process Rights of these Plaintiffs.
Pertaining to CSMS and the individual physicians, it has previously been found that these plaintiffs do not have standing, and therefore, the merits of the claim concerning their party status cannot be addressed by this court. See CBIA v. CHHC, 214 Conn. at 729.
As to plaintiff CHA, it has previously been found that CHA has met the three part test of Worrell, 199 Conn. 609, and therefore has associational standing to bring the above claim. However, the plaintiff CHA has not shown how it has been prejudiced by the Commission's denial of party status since all plaintiff Hospitals have made the same claims before the Commission and this court. Accordingly, even if this constituted error on the part of the Commission, it is not a sufficient basis for reversal of the Commission's decision.
B. The Commission's Failure to Include its Proposed Contract With Information Service Center. Inc. as Evidence In the Administrative Record Violated Conn. Gen. Stat. 4-177
(a)(b) and the Plaintiffs' Due Process Rights.
Plaintiffs contend that at the hearing held on August 26, 1986, the Commission wrongfully denied the plaintiffs the opportunity to introduce into evidence a proposed contract with Information Service Center, Inc. of Baltimore, Maryland.
Plaintiffs further claim that "[t]he UAPA specifically requires that all parties in a contested case `shall be afforded [the opportunity] to respond and present evidence4-177 (a)(b)." (Plaintiffs' Brief, p. 69), (emphasis added).
The record reflects that at the hearing held before the Commission on August 26, 1986, Commissioner Wright posed the following question to plaintiffs' counsel, attorney Eisner.
Wright: "In regard to the proposed contract, what relevance do you see to including a proposed contract that has not been approved by the Commission and then signed by the parties? Eisner: Well, I think its relevant in that the Commission has sent a cover letter to Ms. (inaudible) on August 6th and mailed it to her even though this process was not complete. Also, the [proposed] contract , itself does contain a number of items which we think are relevant to this CT Page 7415 proceeding. . . ." (ROR, #24, pp. 727-28), (emphasis added).
Commissioner Wright further stated that: "[a]fter giving thought to the question of entering a proposed contract into the record, it is my feeling that this is a proposed contract that has not been acted on by the Commission and does not apparently belong in the docket. We will exclude it from the docket at this time." (ROR, #24, p. 728).
Conn. Gen. Stat. section 4-178 (1) (rev'd to 1985) provides in pertinent part that "[i]n contested cases: (1) Any oral or documentary evidence may be received, but the agency shall, as a matter of policy, provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence. . . . The agency's experience, technical competence, and specialized knowledge may be utilized in the evaluation of the evidence." Conn. Gen. Stat. 4-178 (a) (rev'd to 1985).
The defendant Commission acted legally in excluding evidence which it determined was irrelevant. In light of the evidence presented in the record, ROR, #24, pp. 727-28, the Commission has not acted arbitrarily, unreasonably or in abuse of its discretion in this regard. See New Haven v. FOIC, 205 Conn. 767, 774 (1988); see also Griffin. 200 Conn. 498
(where the Connecticut Supreme Court stated that if any reasons support the agency's decision, the decision must be upheld).
VII. Alleged Justifications Included in the Commission's Brief are Outside of the Administrative Record and are Patently not Credible.
Plaintiffs have raised this issue in their reply brief dated November 8, 1988, p. 6.
Record item #22 reveals explanations given by the Commission in rendering its decision. Plaintiffs claim that the Commission's alleged justification are patently not credible. However, plaintiffs are renewing their previous claims of whether the requested data is necessary for the development and implementation of the prospective payment system and whether the Commission's decision is supported by the record.
As previously submitted, on pages 21 through 23, this court finds the requested data is necessary for the development and implementation of the prospective payment system.
IX. The Commission has violated Connecticut's Personal CT Page 7416 Data Act Both by Collecting and Maintaining the Subject Data and by Failing to promulgate Regulations to Protect the Data. (Plaintiffs' reply brief, p. 12).
The plaintiffs' claim regarding an alleged violation of the Connecticut Personal Data Act has previously been addressed at page 29. As pertaining to the second portion of plaintiffs' claim that the Commission failed to promulgate Regulations to protect the requested Data, Agency Regulations19a-165q-2 (h) entitled "Maintenance of confidentiality," sufficiently addresses plaintiffs' concerns.
Plaintiffs raise three additional issues in their supplemental brief dated March 26, 1991. They are as follows:
 A. Conn. Public Act 89-371 Repealed the Prospective Payment System for Which the Subject Data Were Collected.
 B. Conn. Public Act 89-246 Governing Confidentiality of HIV-Related Information Prohibits Hospitals From Releasing Data to the Commission Regarding HIV Positive Patients.
 C. Recent Cases Emphasize Constitutional Privacy Interests in Sensitive Medical Information. [Cases cited discuss Constitutional privacy interest with respect to AIDS].
As previously determined herein, on page 23, — any claims based upon subsequent amendments to the 1985 Commission Statutes will not be considered in addressing the issue of the validity of the regulations, as these were not passed upon by the Commission, and are therefore not properly before this court. See New Haven v. FOIC, 205 Conn. 767, 773
(1988).
As pertains to plaintiffs' argument in regard to constitutional privacy interests in sensitive medical information, plaintiffs are once more raising the privacy interests of patients where it has previously been found, the Hospitals and CHA have not shown that they have standing to raise any claim such as this. Accordingly, all three issues in plaintiffs' supplemental brief will not be considered.
The proper method for plaintiffs to contest the CT Page 7417 applicability of any Regulations-and subsequent amendments to the 1985 Commission Statutes is to petition the Commission for a Declaratory Ruling pursuant to Conn. Gen. Stat. 4-176. See CHHC v. Stamford Hospital, 208 Conn. 663, 672 (1988).
CONCLUSION
This court finds the Commission has not acted illegally, arbitrarily or in abuse of its discretion in determining that the challenged data was necessary for the development and implementation of the prospective payment system as mandated by Conn. Gen. Stat. 19a-165a (rev'd to 1985) in accordance with the Prospective Payment system established under the 1984 legislation.
Additionally, this court finds the Commission's requested Data is being collected for the purpose of conducting management audits of financial audits pursuant to the exceptions listed under U.S.C. § 290dd-3 (b)(2)(B) and 29ee-3 (b)(2)(B).
Joseph L. Steinberg, J.