[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs, the office of consumer counsel (OCC) and the city of Hartford, appeal a decision of the defendant department of public utility control, which approved increases in electric service rates to be charged by defendant Connecticut Light Power Company. The defendants move to dismiss the appeal on the basis that the plaintiffs are not aggrieved.
"The fundamental test for determining aggrievement CT Page 5142 encompasses a well settled two fold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interested . . . has been adversely affected." (Citations and internal quotation marks omitted). LightRigging Co. v. Dept. of Public Utility Control, 219 Conn. 168,173 (1991).
The defendants concede that the OCC's appeal satisfies the first prong of the aggrievement test as articulated in the Light Rigging Co. case, supra. They claim, however, that OCC has failed to demonstrate that its legal rights have been injuriously affected by the department's decision.
The OCC's right to bring this appeal is established by General Statutes § 16-2a(a), which provides, in relevant part, "[the] office of consumer counsel may appeal from a decision, order or authorization in any . . . state regulatory proceeding notwithstanding its failure to appear or participate in said proceeding." The defendants argue that this statute does not relieve the OCC of the burden of proving specific injury to its rights. The argument may not be sustained in this case.
The department's decision authorized rate increases in excess of $47,000,000 for the year beginning July 1, 1994, and in excess of $48,000,000 for the year beginning July 1, 1995. Although these increases amount to only 2%, approximately, in each year, they nevertheless are sufficient to constitute the special injury to OCC's legally protected interests that is a necessary component of "classical aggrievement." It is not necessary, therefore, to address the OCC's contention, which it advanced in the alternative, that its right to appeal is entirely derived from § 16-2a and not dependent on a showing of specific harm. The motion to dismiss OCC's CT Page 5143 appeal may not be sustained.
The basis of the defendants' motion to dismiss the city's appeal is that it does not satisfy the first prong of the classical aggrievement test. Specifically, the defendants contend that the city is just one ratepayer among millions and, therefore, it has no "specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole." In support of this position, the defendants citeConnecticut Business Industry Association, Inc. v.Commission on Hospitals and Health Care et al, 214 Conn. 726
(1990) (hereinafter CBIA I) and CBIA v. CHHC, 218 Conn. 335
(1991) (hereinafter CBIA II).
In CBIA I, the court stated that the plaintiffs were not aggrieved by the defendant commission's decision increasing hospital rates because the same "financial impact of an increase in hospital rates is borne by all members of the public when they require hospitalization." The court held, essentially, that there was nothing to differentiate the plaintiffs from the rest of the hospital rate paying public except that they represented groups of such ratepayers. 214 Conn. 730-731. The force of this ruling was somewhat diluted by the court's later holding that the case was not a "contested case" and thus not appealable whether or not the plaintiffs were aggrieved. 214 Conn. 733.
Any doubts on the viability of the court's ruling on aggrievement in CBIA I were laid to rest by the decision in CBIA II. In that case, the same plaintiffs sought a declaratory judgment, pursuant to General Statutes § 4-175
(Rev. to 1989), that the same hospital rates were invalid. Since the action was not an administrative appeal under § 4-183, there was no "contested case" issue. The court nevertheless imposed the same standard of aggrievement and, citing its statements in CBIA I, quoted above, held that the plaintiffs had no interest in hospital rates that was distinguishable from the interest of those members of the general public who had to pay them. 218 Conn. 342-348.
In the present case, the city seeks to CT Page 5144 distinguish itself from the ratepaying public by pointing to statutes that afford municipalities special treatment. These are General Statutes §§ 16-19 (e) and 16-10a, which provide, respectively, for deferral of rate increases to accommodate municipal fiscal year budgets and for special proceedings to determine the adequacy of service to municipalities and to investigate the rates charged, municipalities. These statutes do have the effect of creating special legal rights for municipalities in the area of public utility rate structure and payment. In this case, however, the department's decision did not in any way affect those rights, and it follows that the city cannot establish aggrievement on that basis.
Based on the Supreme Court's decisions in CBIA I and CBIA II, this court concludes that the city has not established aggrievement in this case. Specifically, the city has not shown that it has a legal interest in the subject matter of the department's decision that is different from that of other members of the public when they purchase electric service. Of course, the city may purchase more service than many members of the public do, but the law does not differentiate on the basis of quantity in this context. Furthermore, it seems to be undisputed that the city is not unique on the basis of the amount of service purchased; there are other ratepayers of the same magnitude. Finally, the court notes that the city is not left without a voice in the ratemaking process. It participated vigorously and effectively as an intervenor in the administrative proceeding in this case, and the plaintiff consumer counsel is specifically charged with the responsibility of representing the interests of all ratepayers, including the city.
For the reasons set forth above, the motion to dismiss the appeal of the plaintiff office of consumer counsel is denied. The motion to dismiss the appeal of the plaintiff city of Hartford is granted.
MALONEY, J. CT Page 5145