[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the defendant East Lyme Planning Commission's denial of plaintiff T.M.K. Associates' application for approval of a 7-lot subdivision entitled "Sleepy Hollow Extension."
The following facts are pertinent to this appeal. CT Page 7922 Plaintiff T.M.K. Associates ("T.M.K.") is the owner of approximately 18 acres of property located north of Sleepy Hollow Road (hereinafter called the "subject property") in East Lyme, Connecticut. (See quit claim deed dated June 27, 1988 in the court file). Prior to seeking subdivision approval, plaintiff applied to the East Lyme Conservation Commission Conservation Commission) for an inland wetlands permit for construction of residential roadway and driveway crossings on wetlands located on the subject property. On October 17, 1988, the Conservation Commission issued plaintiff a two-year inland wetlands permit, designating October 24, 1988 as the permit's effective date.
By application dated February 16, 1990, T.M.K. Partner George Mitchell, on behalf of plaintiff T.M.K., applied to the East Lyme Planning Commission ("Planning Commission") for approval of a 7-lot subdivision on the subject property entitled Sleepy Hollow Extension.
On April 2, 1990, the Conservation Commission reviewed the status of plaintiff's inland wetlands permit and concluded that the permit had expired pursuant to Section 7.2 of the East Lyme Inland Wetland and Watercourse Regulations. Section 7.2 provides that "[a] permit shall expire one (1) year after its approval if no significant work for which the permit was issued has occurred." The Conservation Commission informed the Planning Commission of this decision in a letter dated April 6, 1990. This letter constitutes a "report" for purposes of compliance with Conn. Gen. Stat. 8-26 (rev'd to 1991).
On April 17, 1990, the Planning Commission held a public hearing to consider plaintiff's "Sleepy Hollow Extension" subdivision. The hearing commenced within sixty-five days of "receipt" of plaintiff's application, as required by Conn. Gen. Stat. 8-26d(a). Notice of said hearing was published in "The Day" on April 3 and 13, 1990, in compliance with the notice requirement of Conn. Gen. Stat. 8-26. Notice of said hearing was sent by certified mail to the applicant, George Mitchell, in compliance with Conn. Gen. Stat. 8-26.
A letter dated April 17, 1990, in which the registered sanitarian of the East Lyme Department of Health stated that he recommended subdivision approval for plaintiff's lots 1, 2, 4-6
but not for lot 3 was read at the public hearing.
On April 17, 1990, following the public hearing, the Planning Commission held a regular meeting to consider plaintiff's subdivision application. The Planning Commission voted unanimously (6-0) to deny plaintiff's application for subdivision approval. CT Page 7923
 because the application is incomplete for the following reasons: the report from the Conservation Commission states that there is no valid conservation permit; that lot #3 is not suitable for [sic] on-site septic system; that there is no certification on the record subdivision plan that all lots meet the minimum square requirements; that Sections 7-3-9 and 7-3-11 [of the East Lyme Subdivision Regulations] are not met.
Notice of the Planning Commission's decision to disapprove plaintiff's application was published on April 27, 1990 in "The Day", and a letter dated April 23, 1990 was sent by certified mail to the applicant, George Mitchell, notifying him of the Planning Commission's April 17th decision. These notices were respectively published and sent within fifteen days after the Planning Commission's decision was rendered, in compliance with the notice requirements of Conn. Gen. Stat. 8-26. The Planning Commission's decision was rendered within sixty-five days of the completion of the public hearing, as required by Conn. Gen. Stat. 8-26d(a).
Pursuant to Conn. Gen. Stat. 8-28 (rev'd to 1989, as amended by Conn. Pub. Acts No. 89-356, 2 (1989)) and 8-8
(rev'd to 1989, as amended by Conn. Pub. Acts No. 89-356, 1 (1989)), plaintiff T.M.K. filed an original complaint dated May 9, 1990, at New London Superior Court, against defendants East Lyme Planning Commission and Town of East Lyme. Plaintiff appeals the defendant East Lyme Planning Commission's denial of plaintiff's application for subdivision approval. Service of process was made on May 9, 1990, which is within fifteen days of the Planning Commission's publication of notice of its decision, as required by Conn. Gen. Stat. 8-8 (b). See Conn. Pub. Acts No. 90-286, 1, 3, 9 (1990). Service of process was made on the Town Clerk and the Clerk of the Planning Commission in accordance with Conn. Gen. Stat. 8-8 (e).
The defendant transmitted the record to the court on June 15, 1990, which is within thirty days after the return date (6/5/90), as required by Conn. Gen. Stat. 8-8 (i). Defendants filed an answer on June 25, 1990. The pleadings are closed. On September 13, 1990, plaintiff filed its brief and three exhibits. On October 11, 1990, defendant Planning Commission filed its reply brief and an attachment.
The administrative hearing date for the present appeal was June 14, 1991. CT Page 7924
It should be noted that plaintiff is also presently appealing the Conservation Commission's "revocation" of its inland wetlands permit. Plaintiff filed a motion to consolidate the above action with the case at bar on May 28, 1991, and this court denied the motion to consolidate in a memorandum of decision which may be found at 4 Conn. L. Rptr. 385 (July 16, 1991).
The defendant Planning Commission has the authority to regulate the subdivision of land within East Lyme pursuant to Conn. Gen. Stat. 8-25 (a), which provides in relevant part: "No subdivision of land shall be made until a plan for such subdivision has been approved by the commission. . . . Before exercising the powers granted in this section, the commission shall adopt regulations covering the subdivision of land." Conn. Gen. Stat. 8-25 (a).
"`It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. Cannata v. Department of Environmental Protection,215 Conn. 616, 622-23, 577 A.2d 1017 (1990), quoting Greater Bridgeport Transit District v. Local Union 1336, 211 Conn. 436,438, 559 A.2d 1113 (1989).
Plaintiff has exhausted all administrative remedies and may appeal the decision of the Planning Commission pursuant to Conn. Gen. Stat. 8-28 and 8-8.
Conn. Gen. Stat. 8-8 (b) provides that "any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located." Conn. Gen. Stat. 8-8 (b). "Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal." Light Rigging Co. v. Department of Public Utility Control, 219 Conn. 168, 172 (1991).
 `"The fundamental test by which the status of aggrievement . . . is determined encompasses a well-settled twofold determination. First, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish CT Page 7925 that this specific personal and legal interest has been specially and injuriously affected by the decision." Nader v. Altermatt, 166 Conn. 43, 51, 347 A.2d 89 (1974).' Connecticut Business 
Industry Assn., Inc. v. Commission on Hospitals Health Care, 214 Conn. 726, 730, 573 A.2d 736 (1990); State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295, 299-300, 524 A.2d 636 (1987).
Winchester Woods Associates v. Planning and Zoning Commission,219 Conn. 303, 307-8 (1991).
In Winchester Woods, the court found that the plaintiff, who was the owner of the resubdivision property which was the subject matter of the administrative appeal was aggrieved Id. at 308, citing Bossert Corporation v. Norwalk, 157 Conn. 279,285, 253 A.2d 39 (1968) ("As the owner of the tract in issue, the plaintiff was certainly aggrieved by the action of the common council.") See also Huck v. Inland Wetlands and Watercourses Agency, 203 Conn. 525, 530, 525 A.2d 940 (1987).
In the case at bar, plaintiff has alleged aggrievement in its complaint. Plaintiff did not attempt to prove aggrievement by introducing evidence on that issue at the hearing on appeal. However, the record supports a finding of aggrievement. First, the subdivision application submitted to the Planning Commission states that plaintiff T.M.K. Associates and George Mitchell et al. are the "owners" of the subject property. Second, the proposed warranty deeds submitted by plaintiff for road conveyance to the Town of East Lyme designate T.M.K. Associates as the grantor. Third, during the April 17 public hearing, there is unequivocal testimony that T.M.K. Associates is the owner of the subject property. Finally, the court file contains a quit claim deed dated June 27, 1988, which, appears to transfer ownership of the subject property to plaintiff T.M.K. Associates. The plaintiff is aggrieved by the defendant's denial of its subdivision application. Scope of Judicial Inquiry.
 The trial court may not substitute its judgment for the wide and liberal discretion vested in the local authority when acting within its prescribed legislative powers. (citations omitted.). . . Thus, the court may grant relief on appeal only where the local authority has acted illegally or arbitrarily or has abused its discretion. CT Page 7926 (citation omitted.)' Raybestos-Manhattan, Inc. v. Planning and Zoning Commission, 186 Conn. 466, 469-70, 442 A.2d 65
(1982).
Frito-Lay, Inc. v. Planning and Zoning Commission, 206 Conn. 554,572-73, 538 A.2d 1039 (1988).
 Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached. Calandro v. Zoning Commission, 176 Conn. 439, 440, 408 A.2d 229 (1979). The action of the commission should be sustained if even one of the stated reasons is sufficient to support it. Goldberg v. Zoning Commission, 173 Conn. 23, 26, 376 A.2d 385 (1977).
Primerica v. Planning and Zoning Commission, 211 Conn. 85, 96,558 A.2d 646 (1989).
In Spero v. Zoning Board of Appeals, 217 Conn. 435 (1991), the court held that "[t]he burden of proof is on the plaintiff to demonstrate that the board acted improperly." Id. at 440, citing Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 707,535 A.2d 799 (1988). The burden of proof is on the plaintiff in planning commission appeals. Plaintiff has the burden of proof in the case at bar.
Plaintiff claims that defendant Planning Commission acted illegally, arbitrarily, and in abuse of its discretion when it (1) concluded that the plaintiff did not have a valid inland wetlands permit, or, in the alternative, (2) disapproved the plaintiff's subdivision application when it "should have approved the Plaintiff's subdivision application, subject to a determination by the Court as to the Validity of the Plaintiff's wetlands permit." Plaintiff further claims that, with the exception of the lack of a permit, its subdivision application 3 "conformed with or exceeded" all of the subdivision regulations of the Town of East Lyme.
Defendant argues in its reply brief that plaintiff did not CT Page 7927 satisfy all of the applicable East Lyme Subdivision Regulations.
Section 4-10 of the East Lyme Subdivision Regulations provides in relevant part:
 The Commission has the authority to determine whether a submission constitutes a complete application in accordance with the requirements of these Regulations. If after reviewing a submission, the Commission finds the application to be incomplete in any material respects, it may vote to deny the application for failure to satisfy the requirements of these Regulations, after the applicant has been offered the opportunity to withdraw the application.
`"The planning commission, acting in its administrative capacity herein, has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance. (citation omitted.) If it does not conform as required, the plan may be disapproved."' Reed v. Planning and Zoning Commission, 208 Conn. 431, 433, 544 A.2d 1213 (1988), quoting Forest Construction Co. v. Planning and Zoning Commission, 155 Conn. 669, 674-75, 236 A.2d 917 (1967). See also East Lyme Subdivision Regulation 4-4-5.
 A planning commission, therefore, is only authorized to take one of three courses of action when considering a subdivision application: it can approve the application exactly as it was submitted; it can make changes to the application to ensure compliance with the subdivision regulations and compatibility with the municipality's comprehensive plan, and then approve the application as so modified; or it can disapprove the application outright. Any other action taken by a planning commission necessarily falls outside the statutory delegation of powers contained in the enabling act and cannot stand. Carpenter v. Planning and Zoning Commission [176 Conn. 581, 596, 409 A.2d 1029 (1979))
Moscowitz v. Planning and Zoning Commission, 16 Conn. App. 303,308-09, 547 A.2d 569 (1988). See also East Lyme Subdivision Regulation 4-4-4: Conn. Gen. Stat. 8-26. CT Page 7928
The Planning Commission in the case at bar enumerated four reasons for its denial of plaintiff's subdivision application.
The first reason for denial was the lack of a valid inland wetlands permit.
Section 4-12-1 of the East Lyme Subdivision Regulations provides: If an application involves land regulated as an inland wetland or watercourse under the provisions of Chapter 440 of the Connecticut General Statutes, the applicant shall submit an application to the Conservation Commission no later than the day the application is filed for subdivision or resubdivision. The Planning Commission shall not render a decision until the Conservation Commission has submitted a report with its final decision to the Planning Commission. In making its decision, the Planning Commission shall give due consideration to the report of the Conservation Commission.
East Lyme Subdivision Regulation 4-12-1 (revised October 20, 1987). Conn. Gen. Stat. 8-26.
A letter dated April 6, 1990 from the Conservation Commission to the Planning Commission states that the Conservation Commission found plaintiff's inland wetlands permit to no longer be valid pursuant to Section 7.2 of the East Lyme Inland Wetland and Watercourse Regulations. And, as of the April 17 regular meeting of the Planning Commission, plaintiff had not reapplied to the Conservation Commission for a new inland wetlands permit. Therefore, the record reasonably supports the Planning Commission's first reason for denial, namely that plaintiff no longer had a valid inland wetlands permit.
The second reason for denial enumerated by the Planning Commission was that plaintiff's proposed lot $3 was not suitable for an on-site subsurface sewage disposal system.
Section 4-2-6 of the East Lyme Subdivision Regulations provides in relevant part:
 In accordance with Section 5-4, every application for approval of a subdivision CT Page 7929 must include either a letter from the East Lyme Health Department indicating sufficient evidence that the site has suitable physical characteristics to adequately satisfy the requirements of the Health Department for subsurface sewage disposal systems, or a letter from the East Lyme Water and Sewer Commission. . .
East Lyme Subdivision Regulation 4-2-6.
In a letter dated April 17, 1990 from the East Lyme Department of Health to the Planning Commission, the registered sanitarian states that lot #3 has "indications of shallow maximum ground water levels in the area of a proposed sewage system which could prevent the proper installation of a sewage system in accordance with State Public Health Code requirements. While an underdrain was installed on lot #3 in an attempt to control the groundwater levels, the Department of Health "had insufficient time to properly evaluate the performance of the drain. Therefore, given the evidence before the Department of Health, the Department could not recommend lot #3 for subdivision approval at that time.
Accordingly, the record reasonably supports the Planning Commission's second reason for denial.
The third reason for denial was that there was no certification on the record subdivision plan that the proposed lot conformed to the minimum square requirement.
Section 6-13-7 of the East Lyme Subdivision Regulations provides in relevant part:
 Each lot shall be capable of containing a square each side of which shall be equal to the minimum lot width required in the zone in which it is located with the exception of lots located in the RU-80 zone. . . The front of the square shall be continuous with the setback line for the zone. . . A licensed surveyor and/or professional engineer shall certify by note on the Record Subdivision Plan that the lots are in accordance with the minimum square requirement. This regulation may be waived in accordance with section 4-14 of these Regulations. CT Page 7930
East Lyme Subdivision Regulation 6-13-7.
Neither the Record Subdivision Plan dated February 16, 1990, nor the Record Subdivision Plan dated February 16, 1990 and revised April 2, 1990 bear certification as to the minimum 3 square requirement. Further, no waiver of 6-13-7 was ever sought by the applicant in his application for subdivision approval. Accordingly, the record reasonably supports the 3. Planning Commission's third reason for denial.
The fourth reason for denial was that the requirements of Subdivision Regulation 7-3-9 and 7-3-11 were not satisfied.
Section 7-3-9 of the East Lyme Subdivision Regulations provides: "Unless waived by the Commission, in accordance with section 4-14 of these Regulations because of topography or other conditions, all streets shall join each other so that for a distance of at least 100 feet the street is at right angles to the street it joins." East Lyme Subdivision regulation 7-3-9.
Section 7-3-11 provides: "Local street center lines shall have radii in excess of 150 feet. Road center lines for collector streets shall have radii in excess of 300 feet. The tangent distance between reverse curves shall not be less than 100 feet." East Lyme Subdivision Regulation 7-3-11.
No waiver of 7-3-9 was ever sought by the applicant in his application for subdivision approval.
In the minutes of the April 17, 1990 regular meeting of the Planning Commission, Mr. Battles — the Planning Director — noted that the subdivision "plans indicate that there is less than 100 feet of straight roadway at a 90 degree angle from the intersection of Stone Cliff Drive and Sleepy Hollow Road. Mr. Battles further noted that "there was at least one instance in which the local center lines were 125 feet."
Accordingly, the record reasonably supports the Planning Commissions fourth reason for denial of plaintiff's subdivision application.
Finally, the plaintiff's argument that the defendant Planning Commission should have approved the subdivision application subject to a later court determination as to the validity of plaintiff's inland wetlands permit is not supported by the General Statutes of Connecticut or Connecticut case law.
Conn. Gen. Stat. 8-26 governs a planning commission's consideration of subdivision and resubdivision applications and specifically provides that the commission "shall approve, modify CT Page 7931 and approve, or disapprove any subdivision or resubdivision application or maps and plans submitted therewith. . . ." Conn. Gen. Stat. 8-26.
In Carpenter v. Planning and Zoning Commission, 176 Conn. 581,409 A.2d 1029 (1979), the Stonington Planning and Zoning Commission conditioned its approval of a subdivision application on the approval of the town highway superintendent and the posting of bonds Carpenter, 176 Conn. at 584. The Supreme Court interpreted the language of 8-26, stating that
 [n]othing in the subdivision approval statute, 8-26, allows for the imposition of conditions upon the planning and Zoning commission's approval of a subdivision plan; the statute merely provides for the commission to "approve, modify and approves or disapprove" a subdivision application. Neither are we confronted with any local regulation of the town of Stonington which would authorize the imposition of conditions on a subdivision approval
Id. at 592. The court held that
 an "approval" subject to a condition the fulfillment of which is not within the control of the applicant, or in which an approval by a coordinate agency is not shown to be reasonable probability, is not an "approval" within 8-26 of the General Statutes, and such an approval is thus a "failure to act" within the meaning of that statute.
Id. at 597. The court noted in footnote 7 that "[w]e do not construe the imposition of conditions on a commission's `approval' of a subdivision plan to be an `approval and modification' within 8-26 if those conditions cannot be fulfilled by the commission or subdivision applicant within a reasonable time." Id. at 593 n. 7.
Conn. Gen. Stat. 8-26, states that a "failure of the commissioner to act thereon shall be considered as an approval, and a certificate to that effect shall be issued by the commission on demand." Conn. Gen. Stat. 8-26. See also East Lyme Subdivision Regulation 4-11.
There exists no East Lyme subdivision regulation which CT Page 7932 allows for the type of conditional approval sought by the plaintiff in the case at bar. The "Conditional Approval" East Lyme Subdivision Regulation 4-4-6 is limited in scope and is inapplicable here.
Under the holding of Carpenter v. Planning and Zoning Commission, the Planning Commission in the case at bar would have "failed to act" had it conditioned approval of plaintiff's subdivision application on a later court determination as to the validity of plaintiff's inland wetlands permit because of the fulfillment of that condition is not "within the control of the applicant." Carpenter, 176 Conn. at 597. Therefore, the defendant did not act illegally, arbitrarily, or in abuse of its, discretion when it failed to conditionally approve plaintiff's application.
The defendant Planning Commission did not act illegally, arbitrarily, or in abuse of its discretion when it disapproved plaintiff's application for subdivision approval. The record reasonably supports the Planning Commission's decision.
The appeal is dismissed.
AUSTIN, J.